SANDER and others, Appellants, vs. NEWMAN and others,
Respondents.

*January 14—May 31, 1921.*

*Joint adventurers: Formation: Partnership distinguished: Intent of
parties: Duty of good faith between members: Fiduciary re-
lation: Secret profits: Recovery: Fraud and deceit: When
action accrues: Limitation of actions.*

1. In the law of partnership the element of contract between the
   parties associated to form a copartnership, in the proper sense
   of the term, is ·a fundamental requisite.
2. Partnership contracts, like other contracts, are governed by
   the intent of the parties; and the generally accepted test
   as to whether a partnership exists is that a partnership is
   formed when the parties involved in the transaction have the
   intention that they should be partners.
3. A joint adventure may exist where persons embark in an under-
   taking without entering on the prosecution of the business as
   partners strictly, but engage in a common enterprise for their
   mutual benefit; and each has a right to demand and expect
   from his associates good faith in all that relates to their
   common interest.
4. Where two persons, one having an option to buy land on terms
   of part payment in cash, found a purchaser for the land at an
   increased price but on terms of annual payments with no cash
   down, and, being unable to handle the option, joined two
   other associates, and the four opened a subscription list and
   others were induced to subscribe, one of the four being made
   trustee, the relation between all the parties was not a part-
   nership but a joint adventure.
5. The four associates, being fiduciaries in relation to all the
   other subscribers, became responsible to them in damages for
   fraudulently representing the price for which the lands might
   be purchased and the profit at which they might be resold,
   and the subscribers may recover the amount of the secret
   profits secured and retained by the fiduciaries.
6. A claim for damages because of fraud in collecting and appro-
   priating secret profits was enforceable in a legal action when
   the wrong was consummated, and the statute of limitations
   (sec. 4222, Stats. 1911) applies and is a bar to this action
   to enforce a claim arising out of such a fraud committed over
   six years before the action was begun.

7. The fact that one of the defendants acted as trustee in handling the money and property of the syndicate does not make him accountable for the property irrespective of the six-year statute of limitations, as the right of action against him does not spring out of his relation as trustee to the members of the syndicate, but out of his fraudulent conduct; and an action against him is not one of that class of actions relief for which was "on February 28, 1857, cognizable solely by the court of chancery," and hence within the exception of sub. (7), sec. 4222, Stats.

8. The statute of limitations may be invoked against an action in equity as well as against one at law, if the cause of action constitutes a legal liability enforceable as such in law or equity. *Boyd v. Mutual Fire Asso.* 116 Wis. 155, followed.

APPEAL from an order of the circuit court for La Crosse county: A. H. REID, Circuit Judge. *Affirmed.*

The action was brought for an accounting of funds alleged to be in the hands of certain of the defendants and the *La Crosse Land & Investment Company.* Demurrers to the amended complaint were interposed by three of the defendants upon the ground that it appears upon the face of said complaint that the cause of action was barred by the statute of limitations, sec. 4222 of the Wisconsin Statutes. The demurrers were sustained.

The complaint alleges, in substance, that defendant *Gideon E. Newman,* in 1910, procured an option to purchase from the Musselshell Valley Land Company 13,261.64 acres of land in Montana at the price of $7.15 per acre, payable one fourth down and one fourth each year for three successive years; that defendant *Dow* became associated with defendant *Newman* to assist him in finding a purchaser; that together they found a purchaser, Wheelock & Wheelock, a corporation, which was willing to purchase the lands at $10 per acre without any cash payment down, but with payments in three annual instalments; that being unable to finance the deal themselves, *Newman* and *Dow* associated themselves with the defendants *Morris* and *Lyons,* and the four together agreed to raise the money by subscriptions to

an enterprise to buy the land under the option and to sell it to the proposed purchaser. The complaint further alleges that they represented to the persons who subscribed to said syndicate that the purchase price of the land in question was to be $8.50 per acre, whereas in reality it was $7.15; that the cash payment required was $41,608.39 instead of $23,705.18; that the selling price to Wheelock & Wheelock was to be $9.50 per acre, when they really intended to sell it for $10 per acre; that the defendants *Newman, Dow, Morris,* and *Lyons,* by means of the above mentioned misrepresentations, induced the plaintiffs, other than plaintiff *Holley,* together with a certain number of defendants and persons deceased, to furnish capital in specified amounts to the enterprise, and that such agreement was evidenced by a written subscription; that such plaintiffs, together with defendants *Newman, Dow,* and *Lyons* and three "dummies," *O'Connor, Baker,* and *Appleby,* signed such subscription list, each for a separate amount, in all totaling $42,000, which it was represented would pay the cash payment of $41,608.39 and leave a few dollars for expenses in handling the deal; that the subscribers paid in cash $29,600 and the defendants *Lyons, Dow, Newman,* and *Morris* and their dummies paid nothing.

It is further alleged that defendant *Morris* was made trustee for all of the persons interested; that, as such trustee, *Morris,* on April 6, 1910, made a contract with the Musselshell Valley Land Company and Wheelock & Wheelock for the purchase of the lands; that this contract falsely stated that the cash payment was to be $41,608.39, when in truth and fact such payment was $23,705.18; that *Morris,* as such trustee, received a receipt from the Musselshell Valley Land Company purporting to acknowledge the payment of $41,608.39; that thereby the defendants were enabled to retain their interest in said syndicate without paying anything, besides leaving $5,894.72 in *Morris'* hands. It is also

alleged that on the same day the defendant *Morris,* as trustee, made a contract to sell the lands to Wheelock & Wheelock at the actual price of $10 per acre, but executed a contract in writing by which it was made to appear that the selling price was $9.50 per acre, the difference being made good by Wheelock & Wheelock giving their two promissory notes aggregating $6,630.50, which the conspiring defendants appropriated to themselves; that the plaintiffs and their associates, who were deceived in the above stated manner, did not discover the truth regarding the aforesaid facts until about May, 1916.

The complaint further alleges that at the time of the transactions on April 6, 1910, *Morris* did not have any written contract with the members of the syndicate defining the terms of the trust under which he was acting and that none had been prepared before that date; that on April 6th the representatives of the Musselshell Valley Land Company and Wheelock & Wheelock insisted that a written agreement should be prepared and executed by *Morris* and the members of the syndicate for which he acted; that such a document was afterwards prepared and executed; that on April 13, 1910, a corporation was organized, known as the *La Crosse Land & Investment Company,* to succeed *Morris* as trustee and to take over his title and duties; that at this time the following resolution was adopted: "Resolved, that the assignment executed by *Thomas Morris,* trustee, be and is hereby accepted; that the president and secretary be and hereby are directed to issue stock in payment for said contract to the parties for whom *Thomas Morris* has been acting as trustee." The complaint avers that, although the above resolution recites that an assignment of these contracts had been executed, such assignment had not in fact been executed nor was ever executed.

It is further alleged that at the time of the adoption of said resolution such of the *bona fide* subscribers to the syn-

dicate agreement who were then present had no knowledge of the fact that the land had been bought by *Morris* as trustee for $7.15 per acre and resold by him for $10 per acre; that no such consent to an assignment by *Thomas Morris,* trustee, of the contracts of purchase and sale entered into by him as such trustee was ever given by the Mussel-shell Valley Land Company or Wheelock & Wheelock; that *Edward Lyons* became president of the company and *Thomas Morris* secretary, and as such officers issued cer-tificates of stock to the various members of said syndicate or partnership for their respective interests in the deal, in-cluding the defendants and their dummies; that the new corporation, while yet under the control and officered by two of the defendants, carried out both contracts, receiving the money due on the one contract from Wheelock & Wheel-ock and paying out the money due on the other contract to the Musselshell Valley Land Company; that since such transaction the corporation has performed no other business than to distribute certain surplus money among the stock-holders; that it had in its possession at the time of bringing this action, undistributed, about the sum of $14,500.

The complaint further alleges that the payment of the purchase price of the land by *Thomas Morris,* or his suc-cessor, the corporation, was not completed until about the month of July, 1913, and that the Wheelock & Wheelock contract of April 6, 1910, was not fully executed and com-pleted until about December 1, 1916, at which time said parties finished payments for the land; that *Morris* had never been discharged or released by the members of the syndicate from his duties and obligations as trustee, nor has he ever made a report or accounted to them for his acts and doings as trustee; that he still has or should have in his possession as such trustee the sum of $5,894.72, or there-abouts, of the original trust funds paid into his hands by members of the syndicate; that as trustee *Morris* had notice

and knowledge of the giving of the two notes by Wheelock & Wheelock to defendants *Dow* and *Newman,* representing the difference between $9.50 and $10 per acre, aggregating $6,630.50, and that the proceeds thereof are part and parcel of the trust fund intrusted to his care and custody, for which he has never accounted to members of the syndicate; that defendants *Morris* and *Lyons* received from the *La Crosse Land & Investment Company* each the sum of $3,628.94, part and parcel of the trust funds arising from the sale of lands hereinbefore described; that defendant *Newman* on August 6, 1910, and ever since, has been a nonresident of the state of Wisconsin; that defendant *Appleby* is and for some years has been a nonresident of Wisconsin; that this suit was commenced May 16, 1918.

Relief is prayed for as follows: (1) That the rights of each member of the syndicate to the property, assets, and business thereof shall be determined by the court; (2) that an account be stated in accordance with the principles of equity among and between all, each, and every member of the syndicate and the just and true share of each and every member to the fruits of the enterprise be determined; (3) that defendants *Newman, Dow, Lyons,* and *Morris* be compelled to account for any or all moneys or securities obtained by them, or either of them, out of trust funds part and parcel of the proceeds growing out of the purchase and sale of said land; (4) that the business and affairs of said syndicate conducted through the agency of *Thomas Morris,* trustee, and the *La Crosse Land & Investment Company* as successors in trust, be declared settled, and that a just and equitable distribution be made of the money remaining in said trust funds to the persons and parties found entitled thereto; and (5) for such other and further relief as equity may require and the facts warrant.

For the appellants there was a brief by *C. W. Graves* of Viroqua, attorney, and *Bulkley, More & Tallmadge* of Chi-

cago, of counsel; and the cause was argued orally by *Mr. Almon W. Bulkley* and *Mr. Graves.*

*Frank Winter* of La Crosse, for the respondent *Morris.*

For the respondent *Lyons* there was a brief by *Lees & Bunge* of La Crosse, and oral argument by *Andrew Lees.*

For the respondent *Dow* there was a brief by *Gilbert & Ela* of Madison and *Arthur T. Holmes* of La Crosse, and oral argument by *Mr. Frank L. Gilbert* and *Mr. Holmes.*

The following opinion was filed March 8, 1921:

SIEBECKER, C. J. This is an action to recover funds from the defendants *Newman, Dow, Morris,* and *Lyons* which, it is alleged, they fraudulently obtained and appropriated to their own use out of the proceeds realized on the sale of the lands described in the complaint in the manner set forth in the foregoing statement of facts. The alleged grounds of recovery are that these four defendants entered into a conspiracy to retain secret profits out of the amount paid for the lands, aggregating the sum of $24,533.71. It is alleged that they obtained the sum in the form of cash, notes, and in paid-up interests in the lands purchased from the Mussel-shell Valley Land Company and sold to the Wheelock & Wheelock corporation on April 6, 1910. The alleged facts set out an executed conspiracy and that it was carried out by misrepresentations and fraudulent concealments by the four designated defendants and that the plaintiffs and others were thereby defrauded out of their just shares of the profits of this land deal. The action is planted in equity, and the complaint proceeds upon the idea that the facts alleged show that the arrangement entered into by all the parties to the land transaction constituted a partnership and all of the subscribers to the syndicate members thereof. An examination of the facts fails to show that the parties intended to form a partnership. In the law of partnership the element of contract between the persons associated to form a co-

partnership in the proper sense of the term is a fundamental requisite. The facts of the alleged transaction do not establish the fact that the parties had such an understanding in this undertaking. Partnership contracts, like other contracts, are governed by the intent of the parties, and the generally accepted test of whether or not a partnership exists is that a partnership is formed when the parties involved in the transaction have the intention that they should be partners. 20 Ruling Case Law, p. 831, § 36. For as there pointed out: "Every partnership rests on the mutual consent of its members." The general scheme of the syndicate, the manner of conducting its business from its inception to its conclusion, negatives the idea that the subscribers apprehended or thought of forming a partnership in the true and proper sense of the term. We are convinced that no partnership was intended and that the transactions of the parties do not establish a partnership between the subscribers to the syndicate. The transaction was in substance a "joint adventure."

"A 'joint adventure' may exist where persons embark in an undertaking without entering on the prosecution of the business as partners strictly, but engage in a common enterprise for their mutual benefit; they each have the right to demand and expect from their associates good faith in all that relates to their common interests." *Jackson v. Hooper,* 76 N. J. Eq. 185, 74 Atl. 130.

· The relation to such an adventure is fiduciary in its character, and each co-adventurer is obligated to his associates to deal in good faith in all matters pertaining to their enterprise. The relationship of the parties to such an adventure has been repeatedly recognized in the decisions of this court. See the cases cited in the opinion of the court in *Goldman v. Cosgrove,* 172 Wis. 462, 179 N. W. 673. It is there declared:

"When one becomes a member of a group or association of individuals united for the purpose of prosecuting a joint

or common enterprise, such as the purchase of property, each member of the group owes to every other member thereof the duty of fair, open, and honest disclosure, and no member thereof can by connivance, deceit, or suppression of facts within the right, or to the advantage of every other member thereof to know, procure or accept secret profits, commissions, or rebates to the disadvantage of his co-adventurers. . . . A violation of his duty in that regard constitutes actionable fraud, and the usual remedies for the redress of fraud are available."

It is clear from the facts pleaded that the plaintiffs and defendants in this case did embark in an undertaking without forming a partnership, but for the mutual benefit of buying and selling the land on which *Newman* had an option, and to sell it to the Goodrich corporation at a profit, which was to be divided between them in proportion to the subscription they made to provide the fund to consummate the purchase and sale. Since the four defendants who are alleged to have received a secret profit out of the deal were fiduciaries in relation to all the other subscribers, they became responsible in damages to such other subscribers for the alleged fraudulent concealment and deceit. Viewing the complaint in the light of its allegations, it in substance and effect sets forth a claim, as the circuit court held, ". . . to recover from the four alleged conspirators the amount of secret profits which it alleged they obtained by fraud and deceit, whereby each of the plaintiffs suffered a wrong and proportionately were deprived of moneys to which they were entitled." The remedy appropriate to redress such a wrong has been repeatedly applied in cases that have come before this court. In *Jones v. Kinney,* 146 Wis. 130, 131 N. W. 339, an action was sustained to recover damages for fraud in receiving secret profits in the sale of a lease of oil-bearing lands by some of the co-adventurers. To the same effect is *Goldman v. Cosgrove,* 172 Wis. 462, 179 N. W. 673, and cases there cited. See, also, *Church v. Odell,* 100 Minn. 98, 110 N. W. 346.

We think the facts as pleaded, and which must be assumed

to be true on demurrer, constitute a cause of action in favor of the plaintiffs to recover any damages they sustained as the result of the alleged fraud by the four conspiring defendants in collecting secret profits and appropriating them to their own use and benefit. Such a claim was clearly enforceable in a legal action, and the right to sue thereon arose when the wrong was consummated, namely, April 6, 1910. In principle, then, the complaint presents a case like that of *Pietsch v. Milbrath,* 123 Wis. 647, 101 N. W. 388, 102 N. W. 342. The question arises: Do the statutes of limitation as embodied in sec. 4222 apply to the alleged cause of action? It was there held that promoters concerned in buying land at a given price and "turning the same over to a corporation to be formed, at a much greater price, and to induce others to come into the corporation in ignorance of the facts, and such others contributed the actual capital necessary to fully accomplish the purpose of the promoters, the corporation, both before and after the adoption of the Code, had a remedy at law to enforce the liability of the promoters to refund to the corporation their profits." The application of the statute of limitations to such a cause of action was there most elaborately discussed, and it was held that such a cause of action is barred by the six-year statute of limitations. The cause of action in that case is of the same nature and kind as the cause of action alleged in the complaint in this action. The claim as alleged here is admittedly one arising out of alleged fraudulent conduct by the fiduciaries and hence is in its nature a legal claim, arising out of and produced by the deceit, and is in fact damages flowing from fraud.

The appellants seek to distinguish the liability of *Morris* from one for damages for deceit and fraud upon the ground that he acted as trustee of an express trust and hence is accountable as such in equity for the funds that came into his hands and therefore all causes of action against him were

not subject to the six-year statute of limitations. The fundamental error of this claim is that the right of action alleged in the complaint, as above shown, is in its nature a legal one, which the co-adventurers under the law of this state had the right to enforce against him at any time after the fraud was committed, and hence is not one of that class of causes of action "for relief on the ground of fraud in a case which was, on and before the twenty-eighth day of February, A. D. one thousand eight hundred and fifty-seven, cognizable *solely* by the court of chancery." Sub. (7), sec. 4222, Stats. The alleged right against *Morris* does not spring out of his alleged relation of trusteeship to the plaintiffs as members of the syndicate but out of the alleged fraudulent conduct. Such a cause of action against him constitutes a legal liability enforceable as such in law or equity. The fact that this action is planted in equity does not affect the right to invoke the statute of limitations against its enforcement. "The application of the statute of limitations in equity is determined by the cause of action stated, rather than by the nature of the relief demanded." *Boyd v. Mut. Fire Asso.* 116 Wis. 155, 90 N. W. 1086, 94 N. W. 171. The policy of applying the statute of limitations respecting causes of action of the nature sought to be enforced against *Morris* as trustee is declared by the court in the *Boyd Case* in the following language:

"We feel induced to hold that as neither the statute nor the precedents of this court warrant exception from the protection of the limitation statutes of those who, though holding as fiduciaries and trustees, have at all times been liable to remedy by suit at law for their misconduct as such, we may not with propriety take from them that protection which the statute, in terms, gives."

We find that the trial court was right in holding that the alleged fraudulent conspirators were liable in a legal action for the wrongful conduct of obtaining secret profits out of

the joint adventure, and that such alleged cause of action accrued more than six years prior to the commencement of this action, and hence the cause of action alleged in the complaint is barred by the six-year statute of limitations.

*By the Court.*—The order, appealed from is affirmed.

A motion for a rehearing was denied, with $25 costs, on May 31, 1921.