HAYTON, Appellant, vs. APPLETON MACHINE COMPANY, Respondent.

*January 12—February 6, 1923.*

*Partnership: Joint adventure: Construction of agreement: Intent of parties: Findings: Appeal.*

1. A partnership agreement is construed as other contracts, to determine the intent of the parties.
2. A written contract entered into between the plaintiff, an inventor, and the defendant manufacturing corporation which provided for the manufacture and sale of pumps as invented and designed by plaintiff, for a division of profits, and for the carrying on of the business as the "pump department" of the defendant, but which contained no mention of partners or a partnership name, is construed to indicate an intent to enter into a joint adventure.
3. Findings of the trial court on conflicting evidence cannot be disturbed on appeal when supported by credible evidence.
   ESCHWEILER, J., dissents.

APPEAL from a judgment of the circuit court for Outagamie county: EDGAR V. WERNER, Circuit Judge. *Affirmed.*

An equitable action for an accounting to compel the defendant to account for profits obtained in the manufacture and sale of pumps claimed to have been designed and made by plaintiff pursuant to a contract of copartnership; to account for salary due plaintiff, and for the value of patterns used in the manufacture of pumps; for damages for breach of contract; for dissolution of the partnership; to obtain an

injunction restraining defendant from further manufacturing from the designs of the plaintiff; and for a receiver. The answer of the defendant is in substance a general denial and a counterclaim for moneys loaned to the plaintiff.

The defendant is a corporation located at Appleton, where it had been engaged in the manufacture of pumps, among other things, for thirty years prior to the commencement of this action. It is claimed that the plaintiff is a man highly educated in science, and that he understands the process and manufacture of centrifugal and turbine pumps. He had worked out and originated various complicated systems of mathematics and principles for use and application in the designing and manufacture of centrifugal and turbine pumps which were higher in efficiency than any of the other leading centrifugal pumps on the market.

In August, 1912, the parties entered into an agreement in writing which was as follows:

*"Agreement.*

"This memoranda of agreement made and entered into this 13th day of August, A. D. 1912, by and between the *Appleton Machine Company* of Appleton, Wisconsin, party of the first part, and *T. R. Hayton* of Quincy, Illinois, party of the second part, witnesseth:

"First. The parties hereto mutually agree to manufacture and sell centrifugal and turbine pumps, as invented and designed by the said party of the second part, at Appleton, Wisconsin, for such time as it shall be mutually agreeable; under the following agreements, to wit:

"Second. Party of second part shall have charge of engineering and designing of said pumps and the work of said pump department and shall furnish and permit the exclusive use of all his patents and designs and all improvements on said pumps or any new patents taken out by second party, and second party agrees to devote his best efforts, skill, and time to the business and to furnish all designs of pumps for all uses, both regular and special; and it is agreed that the title to the patents and designs shall be held by second party, and upon the termination of the agreement the same

shall remain the property of second party with the exclusive right to manufacture the same.

"Third. First party in order to carry out this agreement to the best advantage, with the least possible expenditure of money to start in the business, is to advance all money required to pay the expenses of the construction of said patterns and pumps and all other expenses in said pump business and furnish the necessary jigs and templates and allow the use of its present equipment and to secure such other machinery as is found actually necessary to facilitate and carry out the various mechanical operations in an economical and up-to-date manner, at an outlay of not to exceed twenty-five thousand (25,000) dollars; and said party agrees to manufacture said pumps promptly and fill all orders in a reasonable time, that the business and sales may thereby be promoted; that second party shall have no interest whatever in any machinery used or purchased by first party, but that in case this agreement is terminated, then, at the option of first party, the special machinery purchased by first party for the manufacture of said pumps shall be taken by second party at a reasonable valuation, and in case of disagreement on value, the reasonable value shall be fixed by three appraisers, one of whom shall be selected by each of the parties hereto and the third by the two appraisers.

"Fourth. That party of first part shall have control of the financial part of said business; shall keep the books; handle the sales and draw all checks; that all accounts pertaining to said pump business shall be kept separate from the regular business of the *Appleton Machine Company* and shall be known as the 'pump department;' that second party shall have access to the books of the 'pump department' at all times and shall be informed whenever he desires of the status of the business.

"Fifth. That first party during the term of this contract shall be paid for all materials and labor a sufficient amount to cover outlays for the same, including overhead expenses and wear and tear of machinery, based on a price per pound for castings and a price per hour for machine time and pattern work and market price for other material.

"Sixth. That second party is to receive for his services, as above set forth, a reasonable salary to be agreed upon by

the parties from time to time, according to the condition of the business, at not less than forty (40) dollars per week, to be paid as a part of the expense of said business; and the net income of the business after paying all the expenses thereof is to be divided equally between the parties hereto.

"Seventh. It is mutually agreed that if this temporary agreement should prove satisfactory to all parties and it should be determined later to organize a corporation to take over the business hereinbefore described, that first party shall contribute all machinery and other property purchased or constructed during the term of the agreement specifically for the manufacturing of said pumps; and second party shall contribute all his patents and designs and continue with the corporation as its engineer and furnish all designs of pumps for all uses both regular and special; that each of said parties shall be considered as contributing one half of the good will of the business as a further contribution; that each of the parties hereto shall receive twenty-five thousand (25,000) dollars, par value, of the stock of said corporation, upon a proposed capitalization of fifty thousand ($50,000) dollars; that if it should be deemed advisable to capitalize at a greater sum than fifty thousand ($50,000) dollars, the parties hereto shall have the right to each purchase one half of such excess or designate the parties to whom such excess stock shall be sold."

Under the foregoing agreement the parties carried on until December, 1914, when the defendant terminated the contract and dismissed the plaintiff. Action was begun in October, 1918. Trial was had before the court without a jury. Lengthy findings of fact were made covering the case in detail, in which the court found for the defendant on every issue. Judgment was entered dismissing the complaint, and in favor of the defendant on its counterclaim. The plaintiff assigns thirty-seven errors, practically all raising objections to the findings of fact.

For the appellant the cause was submitted on the brief of *C. G. Cannon* of Appleton.

*Francis S. Bradford* of Appleton, for the respondent.

CROWNHART, J.   As we view this case there is only one question of law to be considered, and that is, Does the agreement between the parties constitute a partnership contract?   A partnership agreement is construed as other contracts, to determine the intent of the parties.   *Sander v. Newman,* 174 Wis. 321, 181 N. W. 822.   The agreement here was in writing.   In it there was no mention of partners nor of a partnership name.   Instead, the business was to be carried on as the "pump department" of defendant's business.   The plaintiff was to receive as salary for his services $40 per week and one half of the net profits of the business.   The business was to be experimental and temporary.   If successful, a corporation was in contemplation of the parties to continue the business.   The defendant was to furnish the machinery for the experiments, and plaintiff was to have no interest therein.   Defendant reserved the right to terminate the contract at pleasure.   The expenditures were to be made by the defendant.   Books of account were to be kept by defendant, to which plaintiff was to have access at all times.   These were a few of the provisions of the agreement.   They seemed plainly to indicate the intent of the parties to enter a joint adventure but not to enter into a partnership.   The lower court correctly so held.   *Wagner v. Buttles,* 151 Wis. 668, 139 N. W. 425; *Sander v. Newman,* 174 Wis. 321, 181 N. W. 822.

The evidence discloses that the books showed no profits, but on the contrary they showed a loss of nearly $4,000. The books were open to the plaintiff at all times, and he expressed no dissatisfaction with the manner in which they were kept.   Besides, statements of account were rendered by the defendant to the plaintiff from time to time, to which the plaintiff took no exception.

No useful purpose will be served by considering the assignments of error in detail, or in reviewing the evidence. Suffice to say that the findings are supported by credible

evidence, and they cannot be said to be contrary to the great weight or fair preponderance of the evidence. Such being the case, the findings cannot be disturbed. *Isaac v. Gerretson Co., ante,* p. 417, 191 N. W. 55; *Behrend v. Buchmann,* 169 Wis. 242, 171 N. W. 958.

The experiments under the contract were profitable neither to the plaintiff nor to the defendant. This was unfortunate, but the court was helpless to grant relief.

The defendant terminated the contract, and it is contended on the part of the plaintiff that after the contract was terminated the defendant continued to manufacture pumps from designs and patterns of the plaintiff. This is denied on the part of the defendant, and the court found against the plaintiff. The findings of fact and conclusions of law of the trial court are all in favor of the defendant. For the reasons stated the judgment of the lower court cannot be disturbed.

*By the Court.*—The judgment of the circuit court is affirmed.

ESCHWEILER, J. (*dissenting*). An examination of the testimony in this case impresses me strongly with the view that after the giving of the notice of election by defendant to terminate the relationship between them there was a substantial use made of plaintiff's ideas and plans in further work by defendant to its profit and for which it should be held accountable to plaintiff. Because of such view I cannot agree with the result reached in the majority opinion.