[No. 33927. Department Two. September 5, 1957.]

*In the Matter of the Estate of* CLAUDE C. WILSON, *Deceased.*[1]

[1]Reported in 315 P. (2d) 287.

*Neal, Bonneville & Hughes,* for appellants.

*Teats & Teats (Lee D. Rickabaugh,* of counsel), for respondent.

SCHWELLENBACH, J.—This is an appeal by the surviving partners of the Wilson Brothers Logging Company from a decree in probate fixing the decedent's interest in the partnership under RCW 11.64.030.

In 1933 Claude C. Wilson, Delbert Wilson, A. E. Currie, and G. E. Poston formed, as equal partners, the above named company. The partnership, organized to engage in the logging business, was in essence a family undertaking. Claude and Delbert were brothers; Currie, a cousin; and Poston, a brother-in-law. The partnership agreement was not reduced to writing, and for the most part the business was run in a rather loose manner. Claude assumed charge of the business end, while the other partners worked in the woods.

Delbert died in 1947, and thereafter the partnership was carried on by Claude, Currie, and Poston.

January 12, 1953, Claude died testate, and his surviving spouse, Grace G. Wilson, was appointed executrix of his estate. Thereafter, the National Bank of Washington was appointed administrator *de bonis non.*

Included among the assets of the estate was decedent's interest in the logging partnership. The surviving partners, Currie and Poston, filed a revised inventory and appraisement of the assets of the partnership estate. They also filed a petition which prayed that decedent's interest in the partnership be determined, and that they be permitted to purchase such interest under the provisions of RCW 11.64.030.

The findings of the trial court, which are not disputed, are substantially as follows: During the year 1946, and both prior and subsequent thereto, the logging partnership had sold a large portion of its logs to the Seaboard Lumber Company, of Seattle. In the spring of 1946, Claude and Delbert, without the knowledge of Currie or Poston, obtained a loan from Seaboard in the amount of $15,000 for the purpose of purchasing a caterpillar tractor. The loan was made to the logging partnership and was advanced on the strength of the partnership credit. The entire loan was repaid by the logging partnership. Without the knowledge or consent of Currie or Poston, title to the caterpillar was taken in the names of Bob Wallin and Gordon Wilson (a brother, but not a member of the partnership). By this

transaction Claude, Delbert, Wallin, and Gordon Wilson formed what they considered to be a separate partnership for the operation of the caterpillar.

Immediately after the caterpillar was purchased, it was rented to the logging partnership for eight dollars an hour. The account was carried on the books of the partnership in the names of Bob Wallin and Gordon Wilson. The names of Claude and Delbert did not appear on the books in connection with the caterpillar account, nor did the records indicate that they had any interest whatsoever. In setting up the books of the logging partnership, Bob Wallin and Gordon Wilson were debited with the cost of the caterpillar and certain accessories, in an amount in excess of $15,000. The partnership retained all of the rental income and applied it in liquidation of the amount borrowed to purchase the caterpillar. Bob Wallin and Gordon Wilson did not advance any capital at the time of the purchase.

During the time the caterpillar was rented to the partnership, it was operated by Bob Wallin and Gordon Wilson. The partnership paid them daily wages of $16 a day and, in addition, paid for all gas and oil used by it. At that time, the logging partnership owned like equipment which could perform the same services as the caterpillar.

Upon Delbert's death in 1947, his interest in the "caterpillar partnership" was purchased by Claude individually for the sum of $893.68. Thereafter, the fiduciary income tax returns of the "caterpillar partnership" were made out in the names of Claude, Bob Wallin, and Gordon Wilson, each reporting as having received an equal share of the income.

From time to time, after the caterpillar had been acquired, the logging partnership made loans or advances to Bob Wallin and Gordon Wilson in the amount of $12,425.80. After the loan used to purchase the caterpillar had been paid from the rental income, the partnership continued to retain the rental income and applied it on the loans or advances. At the date of Claude's death, the amount owing had been reduced to $585.80.

The caterpillar was sold in 1953 for $12,750. The court found that Bob Wallin and Gordon Wilson each retained

one fourth of this amount and paid one half to Mrs. Claude Wilson as executrix of her husband's estate.

The trial court's Finding of Fact No. VII provides:

"VII. That the Court finds that the following is a statement of the interest of Claude C. Wilson in the Wilson Brothers Logging Co., which includes the adjustment in the caterpillar transaction:

| | | |
|---|---:|---:|
| "One-third interest of Claude C. Wilson in Wilson Brothers Logging Co. as of the date of his death,.......................... | $15,498.10 | |
| "Reimbursement to Claude C. Wilson's estate for funds advanced for the purchase of the interest of Delbert Wilson in the caterpillar | 893.68 | |
| "Reimbursement to Grace B. Wilson for partnership taxes paid by her on partnership property ............................. | 119.96 | |
| Total ............................. | | $16,511.74 |
| "Credit to A. E. Currie and G. E. Poston for their two-thirds interest in the one-half interest of Wilson Brothers Logging Co. in and to the said caterpillar................ | | 4,250.00 |
| "Net value of the interest of the estate of Claude C. Wilson in Wilson Brothers Logging Co. ............................. | | $12,261.74" |

The trial court entered its decree accordingly, fixing the decedent's interest in the partnership at $12,261.74. Under RCW 11.64.030, the court prescribed the conditions for the purchase of this interest by the surviving partners. This appeal follows.

Appellants have made seven assignments of error which we will summarize. The trial court erred: (1) in finding that decedent did not at any time receive individually for his own benefit any part of the income from the earnings of the caterpillar; (2) in finding that Bob Wallin and Gordon Wilson became owners of one-half interest in the caterpillar; (3) in finding that the estate of Claude should be reimbursed in the amount of $893.68, the entire sum paid by decedent for the purchase of Delbert's interest in the caterpillar partnership; and (4) in not allowing them, as surviving partners of the logging partnership, a two-thirds interest in the sales price and earnings of the caterpillar as a credit against the decedent's interest in the partnership.

Appellants' first assignment of error is directed to that portion of Finding No. IV: ". . . that Claude C. Wilson never at any time received individually for his own benefit any part of the income from the earnings of said caterpillar, . . ."

The earnings from the operation of the caterpillar after the initial loan had been repaid, were retained by the logging partnership to repay advancements or loans made to Bob Wallin and Gordon Wilson. There was no showing that decedent shared in these advances. At the time of his death, there was still owing $585.80 on this account. The testimony concerning the income tax returns of the "caterpillar partnership" was very uncertain. Apparently, Wallin and Gordon felt that the "share of the income" merely meant the reduction of the loan to them. Be that as it may, from an examination of the record, the evidence does not clearly preponderate against the above finding.

The principal issue in this case is: Which firm, the logging partnership or the caterpillar partnership, became the owner of the caterpillar tractor? Under the uniform partnership act, RCW 25.04.080 defines partnership property as follows:

"(1) All property originally brought into the partnership stock or subsequently acquired by purchase or otherwise, on account of the partnership, is partnership property.

"(2) Unless the contrary intention appears, property acquired with partnership funds is partnership property."

The caterpillar was purchased with the proceeds from a loan obtained on the logging partnership credit. The loan was repaid by the partnership.

The caterpillar became partnership property unless a contrary intention appears from the transaction. Was there such a contrary intention, or, to state it another way, was there a meeting of the minds of the partners that it was not to become partnership property? When we consider a "contrary intention," it must not be the contrary intention of one partner—it must be the contrary intention of the members of the partnership. In discussing "intention" as to firm ownership of real property, it is stated in 40 Am. Jur. 197, Partnership, § 97:

"While the intent of the partners is nearly always controlling in determining whether real property is to be treated as partnership assets, this circumstance is not conclusive, and where a partner without the knowledge of his copartners diverts firm moneys and invests them in real property, taking the title either in his own name or in the name of a third person, acting with the intent that the property should not be treated as firm assets, the realty, because the circumstances are such that his intent should be disregarded, may be held to be that of the partnership."

The caterpillar was acquired with partnership funds. No contrary intention by the members of the partnership appears as to its ownership. The fact that the title was taken in the names of strangers did not change the nature or ownership of the asset. It was partnership property of the logging partnership.

The relation of partners is fiduciary in character and imposes upon the members the obligation of the utmost good faith. *Waagen v. Gerde*, 36 Wn. (2d) 563, 219 P. (2d) 595; RCW 25.04.210. We said in *Simich v. Culjak*, 27 Wn. (2d) 403, 178 P. (2d) 336:

"It is the universal rule that partners are required to exercise the utmost good faith toward each other, and, where an accounting is had, it is the duty of a partner who manages, conducts, or operates a partnership business, to render complete and accurate accounts of all of the partnership business. This rule is grounded upon the theory that the managing partner is acting as a trustee for his firm."

Respondent contends that the authorities are consistent in holding that partners have the right to engage in enterprises in their own behalf, provided they act in good faith; that such activity is not in violation of the articles of copartnership, and further, that such activity does not detract from the partner's devoting his time and energy to the main partnership business. We agree. The rule is aptly stated in *Shrader v. Downing*, 79 Wash. 476, 140 Pac. 558:

"It is undoubtedly the rule, as the appellant contends, that one member of a partnership must act in the utmost good faith towards his copartners, and that, if he purchases

property for his individual benefit when the firm itself is entitled to the advantage of such purchase, or secures a valuable contract for himself which it was his duty to obtain for the firm, he will be treated as a trustee for the firm with reference to the transaction, and be compelled to account to his copartners for the profits acquired by reason thereof. But the rule does not absolutely prohibit a member of a partnership from engaging in enterprises in his own behalf, nor does it make all property acquired by a member of a partnership during its existence the property of the firm. The applicability of the rule depends on the facts of the particular case. One partner may not make a profit for himself individually out of the partnership business, or out of the transactions which he conducts privately which in justice and equity ought to have been conducted in the partnership name; but he may, without laying himself liable to account, buy and sell real estate or other property with his individual means, if the transaction is disconnected from the partnership business, is not conducted in competition or rivalry therewith, and he is under no duty to conduct the transaction on behalf of the firm. Any other rule would prevent a member of a partnership from investing his private funds."

■■■■ The rule is inapplicable under the facts in this case. Here the decedent and Delbert did not use their *individual means* to purchase the caterpillar; the transaction clearly was *connected with the logging partnership business*; and its rental by the caterpillar partnership, as owner, to the logging partnership, was obviously injurious to that partnership and its innocent members, Currie and Poston. The acts of partners serving in dual relationships where their private motives may color their actions in their partnership capacity, must be closely scrutinized for possible breach of the fiduciary duty of partners. *Morrison v. Ultican,* 35 Wn. (2d) 504, 213 P. (2d) 617.

■■■ It follows from what we have said that the trial court was in error in ruling that the logging partnership had only a one-half interest in the caterpillar and allowing the surviving partners, Currie and Poston, as a credit against decedent's interest in the partnership, only two thirds of one half of the proceeds from its sale, or the sum of $4,250.

Inasmuch as the logging partnership was the sole owner of the caterpillar, the surviving partners are entitled to a credit of two thirds of the entire sales price, or the sum of $8,500.

■ Claude, while executor of Delbert's estate, paid that estate $893.68 for Delbert's interest in the caterpillar. Delbert's interest was as a member of the logging partnership, the owner of the caterpillar. Because of Claude's fiduciary relationship, we must hold that the purchase of Delbert's interest was for the benefit of the three remaining partners, Claude, Currie, and Poston. Decedent's estate should be reimbursed by the surviving partners for two thirds of the amount paid for Delbert's interest, the sum of $595.78, rather than $893.68, as found by the trial court.

Respondent contends that appellants, after they became aware of all of the facts and circumstances surrounding the purchase, filed a claim against decedent's estate, wherein it was stated:

"2. Purchase price received by the Executrix of the above estate from the sale of the partnership interest in one certain D-8 Caterpillar tractor, Serial No. 2U805, which was purchased on the 20th day of June, 1946, with funds advanced by the Seaboard Lumber Company of Seattle on partnership credit, said Caterpillar tractor having been purchased for Robert Wallin and Gordon Wilson, owners of the other undivided one-half (½) of said caterpillar ............................... $6,750.00"

It is further contended that, by filing the claim and commencing suit thereon after its rejection by the estate, appellants made their election of remedies and ratified or acquiesced in the transaction.

We are aware of the case of *Cheesman v. Sathre*, 45 Wn. (2d) 193, 273 P. (2d) 500, wherein we said:

"A partner cannot sue his copartner and others for conspiracy to convert the partnership assets when the partnership remains in existence and retains valuable assets in which the suing partner concededly has an interest, *unless the wronged partner chooses to treat the acts of his copartner and the other conspirators as a conversion of the partnership assets and a dissolution of the partnership.*

" . . .

"By bringing such an action the innocent partner in effect elects to confirm title to the converted property in the erring partner and his coconspirators, and he must surrender his claim to the converted partnership property when he collects his judgment. Furthermore, his title or interest in the converted property passes to the wrongdoers as of the date of the conversion, and hence the innocent partner suing for damages has no interest in profits earned by use of the partnership property after the conversion."

The doctrine of "election of remedies" is applicable only where there are available to the litigant at the time of election two or more coexistent remedies which are repugnant and inconsistent. *Willis T. Batcheller, Inc. v. Welden Constr. Co.*, 9 Wn. (2d) 392, 115 P. (2d) 696.

What were the remedies available to appellants under the facts? First, they could have vested title in the decedent's estate, Wallin, and Gordon Wilson; in which instance, the rule announced in the *Cheesman* case would have applied. Second, they could have sued to recover the property, but here such right would have been foreclosed by the sale of the property to a bona fide purchaser. Third, they could seek recovery of the partnership interest in the property by way of a credit in determining decedent's interest in the partnership property. Their action was predicated on the latter remedy.

In their claim and in the complaint, appellants alleged that Wallin and Gordon Wilson were the owners of a one-half interest in the caterpillar. That was not an allegation of fact. It was a conclusion of law. The conclusion was erroneous because the facts show that Wallin and Gordon Wilson legally had no interest in the property. Appellants at all times sought their true interest in the property, and the proof showed that they in fact possessed a greater interest than they had concluded. Since this action is primarily concerned with a partnership accounting and a petition to purchase decedent's interest based thereon, equitable principles must be applied and the parties awarded what they are justly entitled to under the facts.

After the caterpillar had been paid for the logging partnership made advances, or loans, to Bob Wallin and Gordon

Wilson in the amount of $12,425.80, which amount had been reduced to $585.80 at the time of Claude's death. Appellants contend that the difference between the total amount of the loans and the amount remaining unpaid represents the "earnings" of the caterpillar, and, therefore, they are entitled to recover two thirds of this amount from the estate. We believe that such construction would place appellants in a much better position than that to which they are entitled. Our purpose is to place them in the position they would have occupied if the affairs of the partnership had been properly conducted. How can this be accomplished?

Bob Wallin and Gordon Wilson borrowed $12,425.80 from the partnership. They paid it back, except $585.80, by renting to the partnership its (the partnership's) caterpillar at eight dollars per hour. The partnership, composed of Claude, Currie and Poston, was entitled to the earnings under the transaction. The earnings would consist of the rental paid ($12,425.80 less $585.80) less the cost of operating the caterpillar, which is properly chargeable to ownership, and which was paid by Wallin and Gordon Wilson. Appellants, as surviving partners, are entitled to two thirds of such earnings. They should be given a credit against decedent's estate for such sum, because of decedent's violation of his fiduciary relationship. Because of the condition of the ledger account of the partnership, we are unable to fully determine the costs mentioned above.

Finally, respondent contends that Bob Wallin and Gordon Wilson should have been made parties to the action. They were not necessary parties to this action. See 39 Am. Jur. 852, 853, Parties, § 5. No recovery of any nature was sought against them, and they will not be prejudiced by the decree to be entered. The actual subject matter of this action is the logging partnership and the interests of the respective parties therein.

We hold that the following represents the interest of Claude C. Wilson in the Wilson Brothers Logging Company, which includes the adjustment in the caterpillar transaction:

One-third interest of Claude C. Wilson in Wilson Brothers
Logging Co. as of the date of his death.................. $15,498.10

Reimbursement of Claude C. Wilson's estate for funds advanced for the purchase of the interest of Delbert Wilson in the caterpillar .......................................... 595.78

Reimbursement to Grace B. Wilson for partnership taxes paid by her on partnership property........................... 119.96

TOTAL ...................................... $16,213.84

Credit to A. E. Currie and G. E. Poston for their two-thirds interest as partners of Wilson Brothers Logging Co. in and to the said caterpillar ...................................... $8,500.00

In addition, the surviving partners are entitled to a credit of two thirds of the earnings of the caterpillar, the amount thereof to be determined in the manner hereinabove provided..

The decree is modified and the cause remanded, with direction to enter a decree in accordance with the views expressed herein. Appellants will recover costs of appeal.

HILL, C. J., DONWORTH, FINLEY, and FOSTER, JJ., concur.