In the Matter of Oliver PLUNKETT, Monica Plunkett, Debtors.

QUARLES HOUSE APARTMENTS, Plaintiff,

v.

Oliver PLUNKETT, Monica Plunkett, Thomas Korb, Interim Trustee, Defendants.

QUARLES HOUSE APARTMENTS, Plaintiff,

v.

Oliver PLUNKETT, Monica Plunkett, Ralph Anzivino, Trustee, Defendants.

Bankruptcy No. 82–01119.
Adv. Nos. 82–0481, 82–0674.

United States Bankruptcy Court, E. D. Wisconsin.

Sept. 27, 1982.

See also, Bkrtcy., 19 B.R. 906.

Harry W. Theuerkauf, Keith R. Varner, Milwaukee, Wis., for plaintiff.

Donald A. Schoenfeld, Habush, Habush & Davis, James Shellow, Shellow, Shellow & Glynn, Milwaukee, Wis., for debtors/defendants.

David A. Erne, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S. C., Milwaukee, Wis., for trustee Anzivino.

Richard E. Braun, Whyte & Hirschboeck, Milwaukee, Wis., for Unsecured Creditors' Committee.

Stephen E. Kravit, Godfrey & Kahn, Milwaukee, Wis., for Continental Bank.

## MEMORANDUM DECISION

### C. N. CLEVERT, Bankruptcy Judge.

The narrow issue before the court, on the Trustee's motion for partial summary judgment, is whether, as of the date of the filing of his Chapter 11 petition, Oliver Plunkett's right to manage the Quarles House Apartments and to receive 6% of the annual gross rental as a management fee, in accordance with the Quarles House Apartments partnership agreement, constituted property of the estate under 11 U.S.C. § 541.

For the purpose of this motion, the parties have stipulated to the facts. The relevant facts are as follows: The plaintiff, Quarles House Apartments ("Quarles House"), is a Wisconsin general partnership, organized on or about June 1, 1978, for the purpose of purchasing, owning and operating income producing property, including the Quarles House Apartments, located at 1570 North Prospect Avenue, Milwaukee, Wisconsin.

Section 5.01 [1] of the partnership agreement designated Oliver Plunkett ("Plunkett"), the debtor, as the managing partner of the Quarles House and gave him "full charge and control of the management, conduct and operation of the ordinary affairs of the Partnership business". The provision further entitled him to receive a management fee equal to 6% of the annual gross rental income, which amounted to $31,320 in 1981. From June of 1978, Plunkett acted as managing partner of the Quarles House and was acting in that capacity on April 15, 1982, the date that he and his wife filed a joint Chapter 11 petition.

On April 20, 1982, five days after the filing of the petition, at a meeting of investors of the Quarles House, 73.56% of the investors voted to remove Oliver Plunkett as managing partner. The legal effect of the vote to remove him is the ultimate issue presented by this motion.

11 U.S.C. § 541 provides, in pertinent part:

(a) The commencement of a cause under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property

---

1. Section 5.01. *Managing Partner.* For convenience and for the efficient management of Partnership affairs, and not in derogation of any managerial rights which the other Partners may have, Oliver Plunkett shall be the Managing Partner under this Agreement, and he shall have full charge and control of the management, conduct and operation of the ordinary affairs of the Partnership business. The Managing Partner shall promptly take all action which may be necessary or appropriate for the purchase and development of the project in accordance with the provisions of this Agreement and applicable laws and regulations. The Managing Partner shall devote to the Partnership such time as may be necessary for the proper performance of his duties. The Managing Partner shall cause the Partnership to obtain and keep in force insurance of such types, including fire and extended coverage in public liability insurance, in such amounts, on such terms and with such carriers as will in his judgment adequately protect the Partnership and its property. The Managing Partner shall be entitled to a management fee equal to 6% of the annual gross rental income.

(1) ... all legal or equitable interests of the debtor in property as of the commencement of the case.

The broad language of the statute reflects Congress' intent to expand the scope of "property of the estate" to eliminate substantial litigation which arose under § 70 of the Bankruptcy Act of 1898:

The bill makes significant changes in what constitutes property of the estate. Current law is a complicated melange of references to State law, and does little to further the bankruptcy policy of distribution of the debtor's property to his creditor in satisfaction of his debts. . . .

The bill determines what is property of the estate by a simple reference to what interests in property the debtor has at the commencement of the case. This includes all interests, such as interests in real or personal property, tangible and intangible property, choses in action, causes of action, rights such as copyrights, trade-marks, patents and processes, contingent interests and future interests, whether or not transferable by the debtor. . . .

These changes will bring anything of value that the debtors have into the estate. The exemption section will permit an individual debtor to take out of the estate that property that is necessary for a fresh start and for the support of himself and his dependents. Certain restrictions on the transferability of property will prevent the trustee from realizing on some items of property of the estate. But on the whole, the trustee will be able to bring all property together for a coherent evaluation of its value and transferability, and then to dispose of it for the benefit of the debtor's creditors.

H.R.Rep.No. 95–595, 95th Cong., 1st Sess. 175–176 (September 8, 1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6136.

Following the intended comprehensive approach to property of the estate, courts interpreting § 541 have generally protected a debtor's contractual right as an asset of the estate.[2]

By its very nature and terms, the managing agreement between Plunkett and the other general partners of Quarles House constituted a contract, a necessary element of a partnership under Wisconsin law.[3] Absent any evidence that the Partnership Agreement is unenforceable, this court must conclude that the contractual provision in dispute was valid and enforceable. Any rights, benefits or duties flowing from this provision, therefore, constituted property of the estate of the debtor within the meaning of 11 U.S.C. § 541 as of April 15, 1982.

Accordingly, the trustee's motion for partial summary judgment is hereby granted and Oliver Plunkett's right to manage the ordinary affairs of the Quarles House Apartments and receive a management fee equal to 6% of the annual gross rental income from the Quarles House Apartments, in accordance with § 5.01 of the Quarles House partnership agreement dated June 1, 1978, is hereby held to be property of the joint Chapter 11 estate of Oliver and Monica Plunkett, as defined by 11 U.S.C. § 541(a).

---

**2.** See, *In re Adana Mortgage Bankers, Inc.,* 12 B.R. 989, 7 B.C.D. (CRR) 1085 (Bkrtcy.N.D.Ga. 1980) (the debtor's right to hold and service mortgages under an agreement with Government National Mortgage Association was property of the estate); *Varisco v. Oroweat (In re Varisco),* 16 B.R. 634, 8 B.C.D. (CRR) 772, Bankr.L.Rep. (CCH), ¶ 68528 (Bkrtcy.M.D.Fla. 1981) (the debtor's exclusive right under a franchise agreement to distribute baked goods constituted property of the estate).

**3.** *Sander v. Newman,* 174 Wis. 321, 327–328, 181 N.W. 822 (1921); see, also, *Heck & Paetow Claim Service, Inc. v. Heck,* 93 Wis.2d 349, 359, 286 N.W.2d 831 (1980).