**In re Andrew H. SELENSKE, Debtor.**

**Ronald SELENSKE and Charles Selenske, Plaintiffs,**

v.

**Andrew H. SELENSKE, Defendant.**

**Bankruptcy No. 87–03638–A. Adv. No. 87–0352.**

United States Bankruptcy Court, E.D. Wisconsin.

May 24, 1989.

Jerome E. Smyth, Green Bay, Wis., Trustee.

Andrew H. Selenske, pro se.

Sydney R. Mertz, Oshkosh, Wis., for plaintiffs Ronald & Charles Selenske.

## DECISION

DALE E. IHLENFELDT, Bankruptcy Judge.

On April 22, 1988, the Circuit Court for Waushara County, Wisconsin entered money judgments in favor of the plaintiffs, Ronald Selenske and Charles Selenske, and against the debtor, their brother, Andrew H. Selenske.[1] In this adversary proceeding on October 11, 1988, plaintiffs moved for summary judgment asking that an order be entered declaring the circuit court judgment to be nondischargeable pursuant to § 523(a)(4) of the Bankruptcy Code.[2] Plaintiffs contend that the principle of collateral estoppel entitles them to the relief they are requesting.

The debtor failed to respond to the motion. He phoned the court on or about November 15, 1988 asking for an extension of time to file a response, and was given until January 15, 1989 to do so, but no response of any kind has been filed.

In support of their motion, plaintiffs have filed copies of the proposed findings of fact of a referee appointed by the circuit court, the findings of fact and conclusions of law of the court itself, and the circuit court judgment. The circuit court record discloses the following facts.

A dispute between the parties arising out of their joint venture in a farming operation culminated in the circuit court lawsuit. The debtor filed the action against Ronald

and Charles Selenske seeking dissolution of the joint venture and an injunction restraining them from interfering with the farm operation. Ronald and Charles counterclaimed for an accounting and, in an amended counterclaim, charged the debtor with fraud and misappropriation of joint venture funds.

A referee appointed by the circuit court, after extensive hearings, submitted proposed findings of fact and conclusions of law to the court in favor of Ronald and Charles, and they then moved for entry of judgment in accordance with the referee's report. Hearing on that motion, scheduled for August 14, 1987, was stayed when the debtor filed a chapter 7 petition in this court on August 13, 1987. After timely filing this adversary proceeding, the plaintiffs obtained relief from the automatic stay in this court and thereafter renewed their motion for entry of judgment in the circuit court.

On March 9, 1988, the circuit court held a hearing on the plaintiffs' motion to confirm the referee's report and the debtor's objections thereto. The debtor appeared in person at that hearing, as did Ronald Selenske and the plaintiffs' attorney. On April 22, 1988, the court filed its findings of fact and conclusions of law and ordered judgment in favor of Ronald and Charles Selenske. It is that judgment which they now seek to have declared nondischargeable.

The court must first determine whether the debtor was a fiduciary within the meaning of § 523(a)(4). The term "fiduciary" as used in § 523(a)(4) applies only to express or technical trusts and does not extend to implied trusts which are imposed on transactions by operation of law as a matter of equity. The debtor must have occupied the position of a fiduciary prior to his acts that created the obligation. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); 3 *Collier on Bankruptcy*

---

1. Judgment was entered in favor of Ronald Selenske in the sum of $30,385.77, in favor of Charles Selenske in the sum of $29,332.23, and in favor of both Ronald and Charles Selenske in the sum of $10,967.25 for costs and disbursements.

2. § 523. Exceptions to discharge.
   (a) A discharge ... does not discharge an individual debtor from any debt—
   (4) for fraud or defalcation while acting in a fiduciary capacity, ...

¶ 523.14, p. 523–96 (15th ed.) The question of who is a fiduciary for purposes of § 523(a)(4) is one of federal law, although state law is important in determining when a trust relationship exists. *In re Short*, 818 F.2d 693, 695 (9th Cir.1987); *In re Johnson*, 691 F.2d 249, 251 (6th Cir.1982).

The circuit court found that the parties had been engaged in a joint venture. Courts have consistently held that the fiduciary responsibilities of joint venturers are the same as those of partners. In 46 Am Jur 2d, Joint Ventures, §§ 3, 4, 50, it is stated,

> Joint ventures have been compared most often with partnerships. A distinction is recognized, but not by all authorities, and admittedly the distinction is difficult. (p. 23)

. . . .

> Admittedly, it is difficult to distinguish between joint ventures and partnerships. The relations of the parties to a joint venture and the nature of their association are so similar and closely akin to a partnership that it is ordinarily held that their rights, duties, and liabilities are to be tested by rules which are closely analogous to and substantially the same, if not exactly the same, as those which govern partnerships. (p. 24)

. . . .

> The relationship between joint venturers, like that existing between partners, is fiduciary in character and imposes upon all the participants the obligation of loyalty to the joint concern and of the utmost good faith, fairness, and honesty in their dealings with each other with respect to matters pertaining to the enterprise. This is especially true as to the participants in a joint venture who are entrusted with the conduct thereof and the control of the property constituting the subject matter of the enterprise. (p. 69)

Wisconsin case law is generally to the same effect. The Wisconsin Supreme Court said in *Barry v. Kern*, 184 Wis. 266, 268, 199 N.W. 77 (1924), "Essentially there is little difference between a partnership and a joint adventure, the latter, as a rule, being more limited and confined in its scope principally to a single transaction," and in *Estate of Week*, 204 Wis. 178, 181, 235 N.W. 448 (1931), "The relations of joint adventurers and their obligations and rights are practically the same as those of partners." In the case of *Insurance Co. of N.A. v. ILHR Department*, 45 Wis.2d 361, 366, 173 N.W.2d 192 (1970), the court said, "A joint venture in this state is not a legal entity separate from the participants in the venture as a partnership is. An employee of a joint venture is the employee of all members of the venture, while in a partnership the partnership is the employer."

Section 178.18(1) of the Wisconsin Statutes [§ 21, Uniform Partnership Act] provides that partners are accountable as fiduciaries to the partnership. It states:

178.18 Partner accountable as fiduciary.

(1) Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property.

In *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir.1986), the court said that "under this statute, the trust arises only when the partner derives profits without consent of the partnership; it is the sort of trust *ex malificio* not included within the purview of § 523(a)(4)." Actually, the statute imposes a trust relationship on partners *prior to* any acts of wrongdoing that would give rise to an obligation under the statute. Nevertheless, although the uniform state law makes the relationship between partners a fiduciary relationship, courts have generally held that it is not a fiduciary relationship for purposes of § 523(a)(4). *Ragsdale v. Haller*, supra; *In re Short*, supra; *In re Hurbace*, 61 B.R. 563 (Bankr. W.D.Tex.1986); *In re Taylor*, 58 B.R. 849 (Bankr.E.D.Va.1986); *In re Holman*, 42 B.R. 848 (Bankr.E.D.Mo.1984). The reason for this is the objective standard that is

applied in determining whether a defalcation exists. Because of the broad meaning given to "defalcation," if the term "fiduciary capacity" were expanded to include ordinary agency or partnership relationships, it would be difficult to limit its application.

As stated in *In re Holman,* supra at p. 850 (Bankr.E.D.Mo.1984):

The reason why courts construed the term "fiduciary" so narrowly was because the term 'defalcation', unlike fraud, was construed to include not only conduct involving bad faith or intentional wrong doing but also the mere failure to account for funds entrusted to the fiduciary.

In both *Haller* (p. 797) and *Short,* (p. 695), the court said, "If state law makes clear that a partner necessarily is a trustee over partnership assets for all purposes, then that partner is a fiduciary within the narrow meaning of § 523(a)(4)." In each case, the court went on to find that the state courts, California and Washington, had raised the duties of partners beyond those required by the literal wording of the statute, and that partners in those states were fiduciaries within the meaning of § 523(a)(4). Cf. *In re Hurbace,* supra.

The Wisconsin courts have acknowledged the general fiduciary responsibility of a partner to his co-partners, but no Wisconsin cases have been found that discuss the nature of that responsibility in other than general terms. In two such cases, the court said that a joint adventurer is in a fiduciary position with respect to his co-adventurers. *Sander v. Newman,* 174 Wis. 321, 181 N.W. 822 (1921); *Jolin v. Oster,* 55 Wis.2d 199, 198 N.W.2d 639 (1972). In *Sander,* for example, the court said, "The relation to [a joint venture] is fiduciary in its character, and each co-adventurer is obligated to his associates to deal in good faith in all matters pertaining to their enterprise." (174 Wis. at p. 328, 181 N.W. 822).

In the *Short* case the court ruled that in Washington a joint venturer in charge of joint venture affairs was in the same position as a managing partner, and a fiduciary within the meaning of § 523(a)(4). In support of its decision, it stated at page 695:

In Washington, [i]t is the universal rule that partners are required to exercise the utmost good faith toward each other, and, where an accounting is had, it is the duty of a partner who manages, conducts, or operates a partnership business, to render complete and accurate accounts of all of the partnership business. This rule is grounded upon the theory that *the managing partner is acting as a trustee for his firm. In re Wilson's Estate,* 50 Wash.2d 840, 846, 315 P.2d 287, 292 (1957) (quoting *Simich v. Culjak,* 27 Wash.2d 403, 408, 178 P.2d 336, 339 (1947) (emphasis added).

Washington is not unusual in this respect. The duty of a managing partner to copartners "is one of the highest fiduciary duties recognized in the law, especially in relation to inactive partners." 59A Am. Jur.2d *Partnership,* § 434 (1987). In the *Haller* case, where the debtor was found to be a fiduciary under § 523(a)(4), "all payments ... were made to [the debtor] and he had control over the funds of the operation," and in *Hurbace,* supra at p. 566, the court indicated that it would have held a managing partner in Texas to be a fiduciary within the purview of § 523(a)(4) in that under Texas law, the managing partner of a partnership enterprise owes copartners the highest fiduciary duty recognized in law. In the landmark New York case of *Meinhard v. Salmon,* Judge Cardozo noted that Salmon was "much more than a coadventurer," he was a "managing coadventurer," and that, "For him and for those like him, the rule of undivided loyalty is relentless and supreme." 249 N.Y. 458, 468, 164 N.E. 545, 548 (1928).

Long ago, the United States Supreme Court in a case from Wisconsin ruled that where a partner, who is in sound health, is made sole agent of the partnership by another, who is not, and who relies on him wholly for true accounts, and the party thus made agent manages the business at a distance from the other, communicating to him no information, the relation of partners, whatever it may be in general, becomes fiduciary, and the law governing

such relations applies. *Brooks v. Martin,* 69 U.S. (2 Wall) 70, 17 L.Ed. 732 (1863).

■ In this case, the circuit court found that the relationship between the parties was that of a joint venture, that the parties had agreed to share profits and losses of the joint venture equally, that the debtor had been in sole control of the joint venture bank accounts, checkbooks, deposits and finances of the joint venture, that the plaintiffs could not sign on the joint venture checking accounts, and that they relied on the debtor to handle the finances of the joint venture. This court finds that the debtor's relationship with his co-adventurers, as described above, was that of a fiduciary within the meaning and scope of § 523(a)(4).

The court must next determine whether the debtor's obligation arose from fraud or defalcation while acting as a fiduciary. A finding of intentional wrongdoing is not required in order to except a debt from discharge by reason of a debtor's fraud or defalcation while acting in a fiduciary capacity. Defalcation occurs when a fiduciary fails to account for money received in that capacity, and it includes instances where there is no willful misappropriation on the part of a debtor. *Carey Lumber Co. v. Bell,* 615 F.2d 370 (5th Cir.1980); *In re Johnson,* supra; *In re Interstate Agency, Inc.,* 760 F.2d 121 (6th Cir.1985). A debtor can be guilty of "defalcation" without being guilty of "fraud." 3 *Collier on Bankruptcy,* ¶ 523.14, p. 523–93 (15th ed.).

■ As noted above, the circuit court in this case expressly found and determined that the parties were engaged in a joint venture, and that the debtor had been entrusted with sole control over the bank accounts, checkbooks, deposits and finances of the joint venture. It found further that he had commingled the joint venture funds with his own personal funds in the same bank accounts; that in addition to using joint venture funds for his personal expenses in the amount of $67,034.32, he caused $18,816.52 of joint venture funds to be transferred to his wife; and that he had thereby fraudulently deprived the plaintiffs of substantial assets of the joint venture

which were properly theirs. These facts are more than sufficient to support a finding that the debtor was guilty of defalcation while acting in a fiduciary capacity.

■ The final determination to be made is whether the factual issues decided by the circuit court constitute collateral estoppel so as to preclude further litigation of those issues in this court. The Seventh Circuit said in *Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir.1987):

Where a state court determines factual questions using the same standards as the bankruptcy court would use, collateral estoppel should be applied to promote judicial economy by encouraging the parties to present their strongest arguments. . . . Thus, if the requirements for applying collateral estoppel have been satisfied, then that doctrine should apply to bar relitigation of an issue determined by a state court.

The court went on to list the following four requirements for collateral estoppel: (1) the issue sought to be precluded must be the same as that involved in the prior action, (2) the issue must have been actually litigated, (3) the determination of the issue must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must be fully represented in the prior action. *Klingman v. Levinson,* supra at 1295.

All of the four requirements set out above have been met in this case. The state court found that there was a joint venture (acknowledged by the debtor in the fact that he instituted the state court action seeking dissolution of the joint venture); that the debtor was in sole control of the finances of the venture, had commingled joint venture funds with his own personal funds and had used joint venture funds for personal expenses in the amount of $67,034.32 and caused $18,816.52 of joint venture funds to be transferred to his wife; and that he had thereby fraudulently deprived the plaintiffs of substantial assets of the joint venture which were properly theirs. These findings show clearly and conclusively that the debtor was guilty of

defalcation as a fiduciary as provided in § 523(a)(4).

The debtor was represented in the circuit court action, in that it was the debtor himself who instituted that litigation, and the record shows that he was present in person at the March 9, 1988 court hearing on the plaintiffs' motion to confirm the referee's report and for judgment in accordance with that report.

In accordance with this decision, an order will be entered declaring the Waushara County Circuit Court judgment of April 22, 1988 to be nondischargeable pursuant to Section 523(a)(4) of the Bankruptcy Code.

This decision shall stand as and for findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.