**In re CARDINAL INDUSTRIES, INC.,**

**In Joint Administration With**

**Cardinal Industries of Florida, Inc., Debtors.**

**CARDINAL INDUSTRIES, INC., and Cardinal Industries of Florida, Inc., Plaintiffs,**

v.

**BUCKEYE FEDERAL SAVINGS & LOAN ASSOCIATION, et al., Defendants.**

**Bankruptcy Nos. 2–89–02778, 2–89–02779. Adv. No. 2–89–0203.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Sept. 28, 1989.

Leonard A. Carlson, Smith & Schnacke, Columbus, Ohio, for AmeriFirst Bank.

Quintin F. Lindsmith, Bricker & Eckler, Columbus, Ohio, for Crossland Sav., FSB.

Stephen C. Sawicki, Hendry, Stoner, Townsend & Sawicki, Orlando, Fla., for Crown Sav. Ass'n.

Nick V. Cavalieri, Arter & Hadden, Columbus, Ohio, for Comerica Bank—Detroit.

John Dilenschneider, Squire, Sanders & Dempsey, Columbus, Ohio, for Cedargate Apartments of Lancaster I Ltd. and certain other partnerships.

Robert T. Wildman, Henderson, Daily, Withrow & DeVoe, Indianapolis, Ind., for Traub and Co., Inc.

Leon Friedberg, Benesch, Friedlander, Coplan & Aronoff, Columbus, Ohio and Stuart Hirshfield, Dewey, Ballantine, Bushby, Palmer & Wood, New York City, Attorneys for Official Unsecured Committee of Creditors for Cardinal Industries, Inc.

P. Steven Kratsch, Smith, Gambrell & Russell, Atlanta, Ga. and James M. Lawniczak, Calfee, Halter & Griswold, Cleveland, Ohio, for Official Unsecured Committee of Creditors for Cardinal Industries of Florida, Inc.

Charles M. Caldwell, Office of the U.S. Trustee, Columbus, Ohio, Asst. U.S. Trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON MOTIONS FOR CLASS CERTIFICATION, PRELIMINARY AND FINAL INJUNCTIVE RELIEF, AND COMPLAINT SEEKING DECLARATORY AND INJUNCTIVE RELIEF

BARBARA J. SELLERS, Bankruptcy Judge.

David G. Heiman, John W. Zeiger, Jones, Day, Reavis & Pogue, Columbus, Ohio, for plaintiffs.

Daniel R. Swetnam, Schwartz, Kelm, Warren & Rubenstein, Columbus, Ohio, for Buckeye Federal Sav. & Loan Ass'n.

## I. INTRODUCTION AND JURISDICTION

This matter is before the Court upon the merits of a complaint seeking declaratory and injunctive relief and motions seeking certification of a defendant class, preliminary and permanent injunctive relief. All

were filed by the plaintiffs, Cardinal Industries, Inc. and Cardinal Industries of Florida, Inc. (collectively the "Debtors").

The relief requested by the Debtors' amended complaint is a declaration that the provisions of 11 U.S.C. § 362(a) apply to certain interests of these Debtors or, if § 362(a) is not applicable, that this Court should use its powers under 11 U.S.C. § 105(a) to extend the reach of § 362(a) and enjoin all members of a defendant class from proceeding against the Debtors with respect to those interests. Such relief is premised upon provisions of the Bankruptcy Code, is within the jurisdictional grant of 28 U.S.C. § 1334(b), and is, therefore, within the scope of matters referred to this Court by the General Order of Reference entered in this district pursuant to 28 U.S.C. § 157(a). Accordingly, the Court has jurisdiction in this proceeding under 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district.

■ In determining the procedure for the entry of the final order in this matter, the Court notes that there is no subsection of 28 U.S.C. § 157(b)(2) which expressly reflects these matters. Such subsections are not an exclusive list of matters which are properly characterized as core proceedings, however. The Court perceives few issues which would have greater relevance to its core jurisdiction than those raised by this complaint concerning specific applications of particular sections of the Bankruptcy Code. And to the extent the Debtors request this Court to use its equity powers under 11 U.S.C. § 105(a), this Court may be the only forum where the appropriateness of such relief could be determined. Therefore, the Court further finds that this is a core proceeding which this Bankruptcy Judge may hear and determine. *See Knopfler v. Schraiber (In re Schraiber)*, 97 B.R. 937 (Bankr.N.D.Ill.1989).

## II. BACKGROUND

### A. *Legal Proceedings*

An extensive history of the procedural posture of this adversary has been set forth in this Court's order of August 18, 1989. *Cardinal Industries, Inc. v. Buckeye Federal Savings & Loan Assoc. (In re Cardinal Industries, Inc.)*, 102 B.R. 991 (Bankr.S.D.Ohio 1989) (order denying approval of settlement of class action). Only the most significant events and developments subsequent to the issuance of that order are set out herein.

On May 15, 1989, Cardinal Industries, Inc. ("CII") and its wholly-owned subsidiary, Cardinal Industries of Florida, Inc. ("CIF") filed in this Court petitions for reorganization under Chapter 11 of the Bankruptcy Code. The Debtors manufacture a standardized modular housing unit which they sell to third parties or use in various real estate projects which they develop. Such projects include apartments, motels, retirement villages, single-family homes, student housing, day care centers, and office facilities. CII and its numerous wholly-owned subsidiaries ("the Cardinal Companies") are a vertically integrated business which plans, builds, manages and supplies services and product to those real estate projects from start to finish. To date, the Cardinal Companies have developed over 1,200 such real estate projects in twenty states (the "Property" or "Properties"). Substantially all of the Properties are owned by limited partnerships (the "Partnerships") formed by the Cardinal Companies. Further, in almost every Partnership, CII or a subsidiary serves as a managing general partner.

On May 23, 1989, the Debtors filed this adversary proceeding to obtain declaratory and injunctive relief against a proposed defendant class. That complaint was amended on May 31, 1989, and the proposed class was narrowed to include only those persons and entities which have or obtain a mortgage or other security interest in any of the Partnership Properties. In addition, the amended complaint added five named defendants to serve as additional representatives of the proposed defendant class. The seven named defendants are: Buckeye Federal Savings & Loan Association ("Buckeye Federal"), AmeriFirst Bank ("AmeriFirst"), CrossLand Savings, FSB ("CrossLand"), Comerica Bank of Detroit ("Comerica"), Crown Savings Associa-

tion ("Crown"), Florida Federal Savings Bank ("Florida Federal"), and The Midland Mutual Life Insurance Company ("Midland").

On August 18, 1989 the Court denied approval of a settlement proposed by the Debtors, Buckeye Federal, CrossLand, Crown and Florida Federal. *Cardinal Industries, Inc. v. Buckeye Federal Savings & Loan Assoc. (In re Cardinal Industries, Inc.)*, 102 B.R. 991 (Bankr.S.D.Ohio 1989) (the "Settlement Order").

Pursuant to the Settlement Order, a hearing was held on August 24, 1989 to consider the Debtors' motions for class certification and preliminary injunctive relief. At the commencement of that hearing the Court considered a motion by the Debtors requesting that the trial on the merits of their amended complaint be consolidated with the hearing on their application for preliminary injunctive relief, pursuant to Fed.R.Civ.P. 65(a)(2). Given numerous objections to that motion, the Court denied the request.

Following denial of the request for consolidation, the Debtors proceeded to present their case regarding class certification and preliminary injunctive relief. At the close of the Debtors' case, various named defendants and putative class members (collectively the "Defendants") filed or orally presented motions to dismiss pursuant to Bankruptcy Rule 7041 and Rule 41(b) of the Federal Rules of Civil Procedure, Bankruptcy Rule 7012 and Rule 12(b) of the Federal Rules of Civil Procedure, and Bankruptcy Rule 7056 and Rule 56(b) of the Federal Rules of Civil Procedure. Given the nature of the proceeding in which the motions were brought and the stage to which this adversary proceeding had progressed, the Court found the motions to be procedurally inappropriate and therefore denied all of the dismissal motions.

Further, pursuant to Fed.R.Civ.P. 65(a)(2), the Court determined that the trial of this action on the merits should be advanced and consolidated with the hearing on the Debtors' application for preliminary injunctive relief. On September 6, 1989, the Court reconvened to resume the consolidated hearing of this matter (the "Consolidated Hearing").

At the Consolidated Hearing, the Debtors chose not to supplement the evidentiary record established at the August 24 hearing and rested. The Defendants again moved for dismissal of the adversary proceeding pursuant to Fed.R.Civ.P. 41(b). The Court orally sustained that dismissal motion to the limited extent it related to certification of a defendant class established to effectuate injunctive relief premised solely upon § 105(a) of the Bankruptcy Code. As to § 105(a) injunctive relief dependent upon a finding that § 362 of the Bankruptcy Code applied to the Debtors' interests in the Partnerships or the Partnership Properties or arising from an extension of § 362 through powers granted under § 105, the Court denied the Defendants' motions to dismiss. The rationale of the Court is detailed below.

Following the Court's ruling on the motions to dismiss, various named defendants and putative class members proceeded to introduce testimony from the Settlement Hearing into the evidentiary record. Certain of the Defendants also moved for the admission of supplemental loan documents, affidavits of client representatives and stipulations of fact. At the conclusion of the hearing, following closing arguments by the Debtors, named defendants and certain participating putative class members, the Court took this matter under advisement.

### B. *Intervention, Exclusion and Dismissal Requests*

At the time of the hearing on the settlement the Court permitted intervention, as parties but not as putative class members, by the Official Committee of Unsecured Creditors of Cardinal Industries, Inc. (the "Creditors' Committee"); Cedargate Apartments of Lancaster I, Ltd. and one thousand limited partnerships, more or less, in which CII or an affiliate of CII serves as a general partner ("Cedargate"); and Traub & Company, Inc., as agent and attorney-in-fact representing a majority of the limited partners in several Indiana limited partner-

ships of which CII was the general partner ("Traub").

The Ford Motor Credit Corporation ("FMCC") and John Hancock Mutual Life Insurance Company on its own behalf and for other similarly situated Defendants ("Hancock") also sought to intervene as representatives of the defendant class. The Court now determines that such interventions would serve only to delay resolution of this matter at this point in the proceedings. Despite denial of such motions, however, previous motions to dismiss by FMCC and Hancock were considered and denied as if such interventions had been appropriate.

In addition, thirty (30) putative class members entered into voluntary forbearance agreements with the Debtors and were excluded from the defendant class by an order entered August 15, 1989.

At the August 24 hearing, the Debtors stated that an agreement had been reached with named defendant Midland. As part of that agreement the Debtors requested that Midland be dismissed from this adversary proceeding. The Court granted the request without objection.

Finally, at the commencement of the Consolidated Hearing, named defendant Florida Federal indicated it had reached an agreement with the Debtors and requested to be dismissed. That request was also granted by the Court without objection. The Debtors further informed the Court that dismissal would be sought for five more putative class members which had executed forbearance agreements. Those Defendants have since been dismissed from this action.

### III. FINDINGS OF FACT

#### A. *The Debtors' Business Operations*

CII is a privately held Ohio corporation headquartered in Columbus, Ohio. Almost all of its outstanding shares are owned by Austin Guirlinger. Founded in 1954, the hallmark of CII has been the manufacturing of a standardized twelve feet by twenty-four feet (12' × 24') module developed in 1969. As previously indicated, these modules are used in the Partnership Properties and are sold to third parties, either as a developed Property or as units for such third parties' specific uses. The vertical integration of CII and its approximately twenty-five (25) wholly-owned subsidiaries permits the Cardinal Companies to be involved in every aspect of the development of a Property from conception to consumption. The Cardinal Companies are not only responsible for site selection and acquisition, but also financing and construction. Following construction, the Cardinal Companies provide each project with property management and accounting services, refinancing, and even replacement parts. Income from the management services constitutes a substantial segment of the Cardinal Companies' receipts.

Presently, the Cardinal Companies are involved in approximately 1,000 real estate projects. Each project is owned by a Partnership which operates a discrete property or a single phase of a multi-phase property. Of the 1,000 Partnerships, approximately 455 are unsyndicated. In the unsyndicated Partnerships, CII or a subsidiary serves as the managing general partner and one of CII's wholly-owned subsidiaries is the sole limited partner.

The remaining Partnerships are syndicated. Those Partnerships have outside third-party investors who have purchased the limited partnership shares sold to raise equity funds to construct and operate the Properties. The number of outside investors is nearly 10,000 and their total investment is estimated at $425,000,000. CII or a subsidiary also serve as the managing general partner of these Partnerships.

Recently, an additional general partner was added to each of the Partnerships. For all but 18 of the Partnerships that new general partner is a corporation known as R/E Management, Inc., an Indiana corporation owned entirely by Austin Guirlinger, the primary shareholder of CII. In the remaining 18 partnerships the new general partner is Red Bird Management Co., Inc., owned by Howard Spies, the in-house general counsel for CII.

Certain changes in the Internal Revenue Code which decreased the tax benefits available to investors in real estate limited partnerships and oversupply in the budget motel market have caused an unexpected financial downturn in the business of the Cardinal Companies. That downturn, coupled with cash flow problems and foreclosure proceedings against certain Partnership Properties, led to Chapter 11 filings in this Court to date by the parent, CII; one of its subsidiaries, CIF; and 24 of the Partnerships.

### B. *Actions Pending Against the Partnerships or the Properties*

Testimony presented at the hearing on the settlement revealed a significant number of actions brought against the Partnerships or the Partnership Properties. As of July 21, 1989 over two hundred judicial and non-judicial actions had been brought by first mortgage lenders. Those actions, brought in several different states, seek either foreclosure or the appointment of a receiver or both. In addition to those actions pending, the record indicates that lenders have sixty-four foreclosure sales scheduled and that as of July 21 receivers were in place for fifty-five of the Partnership Properties. It is also evident that twenty-three foreclosure sales were stayed by the filing of individual Chapter 11 cases for certain of the Partnerships.

The record further establishes that numerous first mortgage lenders have sought non-possessory relief. A representative for the Debtors testified that lenders have invoked assignment of rent provisions against 340 of the Partnership Properties. Testimony also indicates that a number of statutory or judgment lien creditors have instituted actions against the Partnerships or the Partnership Properties. Trade creditors have sought judgments for over-due payment of bills and subcontractors and materialmen have filed mechanics' liens against the Partnership Properties. Regardless of the type of claim being enforced, the Debtors claim to lack the financial and human resources to defend each of these individual actions.

### C. *The Pool of Assets*

The benefits to the estate to be obtained from the relief sought are protections for certain receivables from the Partnerships which comprise the Debtors' most significant assets. Without these assets the Debtors indicate that reorganization may not be possible. Without application of the automatic stay or the issuance of an injunction, the Debtors also allege that irreparable harm to those interests will occur from actions by the Defendants which would destroy the potential value of these assets.

The protection sought is to preserve what is commonly referred to by the Debtors as the Pool of Assets. A representative of Kenneth Leventhal & Company ("Leventhal"), an accounting firm retained by the Debtors to assist in the restructure of their obligations, identified components of the Pool of Assets as various receivables from the Partnerships, including: (1) monies advanced to the Partnerships by the Debtors or their subsidiaries for which second mortgage notes were received; (2) advancements to the Partnerships included as mortgage differentials in wraparound mortgage notes, representing obligations for funds advanced for projects above those provided by the first mortgage lenders; (3) unsecured claims against the Partnerships for operating advances; and (4) unsecured construction loans for projects currently in progress. Leventhal also identified as assets the management contracts between certain of the Cardinal Companies and the Partnerships, and the Debtors' general partner interests in the Partnerships, including a share of profits and losses, control and management rights and the tenancy in partnership interests in the Properties. CII also includes certain rights as the vendee in certain Agreements to Convey Real Property (the "Executory Contracts") which provide for purchase by CII of the Properties of the unsyndicated Partnerships.

Leventhal estimates the aggregate potential value of the first four components over a ten-year period, without discount to present value, to be approximately $300,-000,000. The largest portion of that value,

$169 million, is ascribed to the second mortgage receivables. However, in making the value analysis Leventhal did not distinguish whether any particular assets were owned by the Debtors or by another of the Cardinal Companies. In fact, testimony establishes that most of the direct ownership of the assets not directly related to the general partner interests is in subsidiaries of the Debtors. Of the $169 million in second mortgage obligations, only 16, with a face value of approximately $2,600,000, are owed directly to CII or CIF. The overwhelming majority of second mortgages notes are held by non-debtor subsidiaries.

After payment of Partnership creditors, it is the value of those assets which may be realizable over time which are to comprise a significant portion of the Debtors' estates for repayment to their creditors. Realization of that value is to be accomplished by restructure of the mortgage obligations against the Partnership Properties, general down-sizing of the manufacturing side of the business, elimination of all unnecessary overhead and new business.

D. *The Factual Basis for the Debtors' Asserted Interests in the Partnerships or Properties of the Partnerships*

There are a variety of interests asserted in the Partnerships or the Partnership Properties upon which the Debtors base their right to seek a declaration by this Court that actions by the Defendants against those interests are stayed either by the automatic stay imposed by 11 U.S.C. § 362 or by an injunction to be imposed by the Court. Those specific interests fall into three categories: (1) those attributable to the Debtors' status as general partner in each of the Partnerships, including the right to share in the Partnerships' profits and losses (the "Partnership Intersts"), the right to control and manage the Partnerships (the "Management Interests"), and interests in the Partnership Properties as tenants in partnership (the "Tenancy Interests") (collectively the "General Partner Interests"); (2) those resulting from CII's position as vendee to the Executory Contracts (the "Vendee Interests"); and (3)

those attributable to notes held directly by the Debtors, secured by second mortgages against sixteen of the Partnership Properties (the "Second Mortgage Interests").

1. *The General Partner Interests*

At the time of the Chapter 11 filings one of the Debtors was the managing general partner in approximately 904 Partnerships. Most, if not all, of those Partnerships also have at least one additional general partner, apparently without any management function and primarily intended to serve as a substitute general partner should such substitution be compelled by the Debtors' bankruptcy filing.

Sample partnership agreements indicate that the Management Interests, or the powers exercisable by the managing general partner, are generally those contemplated by the Uniform Partnership Act. Such powers include the right to incur indebtedness on behalf of the Partnership or to mortgage, sell or lease interests in Partnership Property, and the authority to enter into contracts for the management of Partnership Property. Limited partners are not given any management or control rights. Various contractual arrangements with other of the Cardinal Companies are also set forth in the partnership agreements.

The partnership agreements set forth the Partnership Interests as certain percentages by which cash flow, profits and losses, or net proceeds from sale or refinancing of Partnership Property are to be allocated. Although those arrangements are not all identical, for purposes of simplifying that data for the issue presently before the Court, some generalizations can be made.

In the nonsyndicated Partnerships, where one of the Debtors is the managing general partner and a subsidiary or affiliate of the Debtors is the only limited partner, profits and losses from operations generally are distributed 91% to the limited partners as a class and 9% to the general partners as a class. Cash flow from operations is allocated in a range from 90% to 99% to the limited partner class and 1% to 10% to the general partner class. Net proceeds obtained by refinancing a Property

are to be distributed 70% to the limited partner class and 30% to the general partner class or, like net proceeds from any sale of a Partnership Property, for repayment of each partner's net adjusted capital account and then divided equally between the general partner and limited partner classes.

In the syndicated Partnerships the arrangements are more complex and more variable. However, on a simplified basis, from distributable cash those limited partners are allocated most or all of the cash until a 9% to 10% annual return on their capital contribution is reached and then the cash is divided at 70% to the limited partners as a class and 30% to the managing general partner. Upon sale or refinancing of a Property, the limited partners are to receive all net proceeds up to the amount of their adjusted net capital contribution and annual stated 9% to 10% return not previously received. Only then may any distribution be made to the managing general partner on its account or return. Any proceeds remaining are allocated at 70% to 75% for the limited partners as a class and 25% to 30% for the managing general partner.

The partnership agreements generally do not specify ownership interests in particular Partnership Property. Accordingly, such Tenancy Interests must be determined under the applicable state law. For purposes of this proceeding, the Court notes that all arguments were based upon Ohio law which codifies the Uniform Partnership Act at Chapter 1775 of the Ohio Revised Code and the Uniform Limited Partnership Act, as enacted in 1984, at Chapter 1782 of the Ohio Revised Code.

### 2. *Vendee Interests in the Executory Contracts*

On the morning of the day its Chapter 11 petition was filed, CII entered into Executory Contracts with 373 of the nonsyndicated Partnerships in which CII was a general partner. Those Executory Contracts provide that each signatory Partnership agrees to convey its real property by quitclaim deed to CII, subject to existing liens and mortgages. In return, CII will give each Partnership a non-recourse note, secured by a mortgage against the related Partnership Property, in a principal amount equal to that Partnership's unsecured debt. Prior to or upon a sale of the Partnership Property to a third party, the note and its accrued interest will be payable. Upon each conveyance to CII, CII also will give the existing sole limited partner in each Partnership a note equal to that limited partner's capital contribution to the Partnership. Repayment of that second note, however, is subordinated to payment of the note for the Partnership's unsecured debt.

After each conveyance CII will lease the Partnership Property back to the Partnership from which it was conveyed. The rental fee for such lease is to be 90% of the Partnership's available cash after payment of all costs associated with the Property, including debt service for any mortgage. The parties' obligations to close the Executory Contracts continue until May 15, 1990, after which either party may terminate the agreement. Likewise, if this Court determines that the automatic stay applies to the Partnership Properties, CII's obligation to purchase any Partnership Property and each Partnership's obligation to convey its Property terminate. The Court's approval of each contract is required prior to closing. Certain other conditions precedent within the control of the parties are also specified.

The stated purpose for each of the Executory Contracts is to enable CII, through application of the doctrine of equitable conversion, to achieve an interest in the Properties which would trigger the protection of the automatic stay for those Partnership Properties. No amounts are specified in the Executory Contracts either for the unsecured debts assumed by CII or for any appraised or going-concern value of the Partnership Properties. Likewise, no specific consideration was given by CII at the time it executed the Executory Contracts.

### 3. *The Second Mortgage Interests*

In addition to the Debtors' General Partner Interests and CII's Vendee Interests in each of the Executory Contracts, CII and CIF assert certain interests in Properties

of the Partnerships as holders of 16 notes collateralized by mortgages or deeds of trust. The aggregate face value of these Second Mortgage Interests is approximately $2,600,000. Some of the second mortgages may be pledged as security for other obligations of the Debtors. There is no evidence that any of the mortgages have been recorded or are otherwise enforceable against third parties.

## IV. ISSUES OF LAW

There are three primary issues before the Court for decision at this time:

1. Should a defendant class be certified?

2. Are actions by the named defendants or by members of the putative class against the Partnerships or the Partnership Properties stayed by the provisions of 11 U.S.C. § 362(a)(3)? And if the provisions of § 362(a)(3) stay such actions, should the Court additionally enjoin parties from violating that automatic stay?

3. If the provisions of 11 U.S.C. § 362(a)(3) are neither sufficient nor applicable to protect the Debtors' interests in the Partnerships or the Partnership Properties, should this Court extend the scope of § 362 to include such interests and enjoin the named defendants or members of the putative class from proceeding against the Partnerships or the Partnership Properties?

## V. CONCLUSIONS OF LAW

### A. *Certification of a Defendant Class*

Citing the volume of litigation pending against the Partnerships and the need for immediate relief, the Debtors contend that initiating separate proceedings against individual lenders is not a viable option. Given that contention, the Debtors seek by motion to certify a defendant class under Rule 23 of the Federal Rules of Civil Procedure. The Debtors define the putative class to include all persons and entities who have or obtain a mortgage or other security interest in property of a limited partnership in which CII or a wholly-owned subsidiary is a general partner. The appropriateness of certifying such a class is delegated to the discretion of this Court.

Bankruptcy Rule 7023 expressly provides that Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") applies in adversary proceedings. The authority to certify a defendant class is derived from Rule 23(a), which provides: "one or more members of a class may sue *or be sued* as representative parties on behalf of all ..." Fed.R. Civ.P. 23(a) (emphasis added). And, as the Debtors correctly state, Bankruptcy Courts have on certain occasions certified a defendant class. *See, e.g. Guy v. Abdulla (In re Lowers),* 57 F.R.D. 14 (N.D.Ohio 1972); *Broadhollow Funding Corp. v. Fitzmaurice (In re Broadhollow Funding Corp.),* 66 B.R. 1005 (Bankr.E.D.N.Y.1986). However, before certifying a defendant class the Debtors must demonstrate to this Court that the proposed class satisfies the four prerequisites of Rule 23(a), namely: numerosity, common issues, typical defenses, and adequate representation. The Debtors also must satisfy one of the functional class requirements of Rule 23(b). *Alexander Grant & Co. v. McAlister,* 116 F.R.D. 583, 585–86 (S.D.Ohio 1987); 1 H. Newburg, *Newburg on Class Actions* § 4.45 at 372 (2d ed.1985).

### 1. *Requirements For Certification Under Rule 23*

#### a. *Numerosity*

Rule 23(a)(1) provides that the putative class must be "so numerous that joinder of all members is impracticable." It is important to emphasize that joinder need not be impossible, but rather impracticable. *In re Itel Securities Litigation,* 89 F.R.D. 104 (N.D.Cal.1981). Impracticality has been interpreted to mean "extremely difficult or inconvenient but not necessarily impossible." *Broadhollow,* 66 B.R. at 1008. Further, *Newburg* states that "for convenience and economy reasons, the joinder impracticability aspect of the Rule 23(a)(1) criterion is applied more flexibly for defendant classes than plaintiff classes;" and, "assuming other class actions prerequisites are satisfied, the joinder impracticability test is rarely a stumbling block for uphold-

ing a defendant class action." *Newburg on Class Actions* § 4.55 at 395.

### b. Commonality

■ The second prerequisite, contained in Rule 23(a)(2), requires "questions of law or fact common to the class." The test for determining whether this prerequisite has been satisfied stresses quality not quantity. There need only exist one significant issue or fact common to all members of the putative class. *Newburg on Class Actions,* § 3.10 at 154. The significance of that single issue or fact takes on additional importance in a defendant class action, however. The existence of an unwilling advocate poses due process considerations of fairness for absent class members. Therefore, the Court must exercise special care "in identifying issues that are common to the class that will be automatically defended by the named defendant in the process of defending its own conduct." *Newburg,* § 4.56 at 395.

### c. Typicality

■ The typicality of claims or defenses test "shift[s] focus from the characteristics of the class members to the characteristics of the named representatives." *Broadhollow,* 66 B.R. at 1009. Rule 23(a)(3) requires that "the claims *or defenses* of the representative parties are typical of the claims *or defenses* of the class." (Emphasis added). The typicality requirement has not been interpreted to mean identical. *Grant,* 116 F.R.D. at 588; *Oneida Indian Nation v. State of New York,* 85 F.R.D. 701, 705 (N.D.N.Y.1980). However, the existence of defenses that are unique either to a representative defendant or to absent class members may impact directly upon the adequacy of representation. Thus, it is generally held that "individual issues should not normally be litigated within the context of a defendant class action unless full rights to raise individual defenses are afforded." *Newburg on Class Actions,* § 4.57 at 396–397.

### d. Fair and Adequate Representation

■ The final prerequisite of Rule 23 requires a determination that "the repre-

sentative parties will fairly and adequately protect the interests of the class." Fed.R. Civ.P. 23(a)(4). The Court is cognizant of the added importance this requirement must be given in the context of a defendant class action. *Grant,* 116 F.R.D. at 588. Consideration, therefore, must be given to whether: (1) the plaintiffs have named weak defendants; (2) the named defendants have sufficient resources to properly defend the action; (3) the named defendants have claims substantial enough to warrant defending; and (4) there exists collusion between the plaintiffs and the named defendants. *Broadhollow,* 66 B.R. at 1011. These factors tend not to present insurmountable obstacles for certification of a defendant class. *Newburg on Class Actions,* § 4.58 at 397. Rather, courts note the irony that an unwilling defendant who vigorously opposes his representative capacity may in fact prove to be the most effective advocate of the class. *See Broadhollow,* 66 B.R. at 1011. The test is whether the Court can conclude that by asserting their own defenses, the representatives have necessarily raised all defenses common to the class. *Doss v. Long,* 93 F.R.D. 112, 118 (N.D.Ga.1981). *Accord* Note, *Defendant Class Actions,* 91 Harv. L.Rev. 630 (1978).

### e. Additional Requirement of Rule 23(b)

In addition to satisfying the prerequisites of Rule 23(a), certification of the proposed class requires satisfaction of any one of the requirements set forth in Rule 23(b). The Debtors base their motion for class certification on Rule 23(b)(1)(B), which provides:

(b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

\* \* \* \* \* \*

(B) adjudication with respect to individual members of the class which would as a practical matter be dispositive of the

interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

Fed.R.Civ.P. 23(b)(1)(B) (West 1989 ed.)

■ Rule 23(b)(1)(B) recognizes that even if a class action is not employed, adjudication of the initial suit may, as a practical matter, determine class interests; and thus, a class action "should be utilized to assure that the rights of absent parties are adequately protected." *Guy*, 57 F.R.D. at 18. If a multiplicity of actions would create a risk of incompatible standards of conduct, certification under Rule 23(b)(1)(B) may be an effective mechanism which also conserves judicial resources. *First Federal of Michigan v. Barrow (In re Salem Mortgage Co.)*, 878 F.2d 912 (6th Cir.1989). Likewise, Rule 23(b)(1)(B) is applicable to the type of action in which "the class members have claims against a fund that may prove insufficient to satisfy all of them." *Broadhollow*, 66 B.R. at 1013, *citing* 7A Wright, Miller, Kane, *Federal Practice and Procedure:* Civil 2d, § 1774 at 437 (1986).

### 2. *Application Of Rule 23 To Request For Declaratory Relief*

■ The Court turns first to the issue of certification of a defendant class for the limited purpose of effectuating a declaration that 11 U.S.C. § 362(a)(3) applies to stay class members from pursuing foreclosure actions against the Partnership Properties. Review of the facts presented clearly demonstrates that the requirement of numerosity has been satisfied. The proposed class is comprised of more than 265 lenders, located in many different states. If joinder of a group of this size and diverse geographical location is not impossible, it is at least impracticable as contemplated by Rule 23(a)(1).

Further, the commonality factor required by Rule 23(a)(2) is satisfied in this context. The question of law regarding the applicability of § 362(a)(3) to actions against the Partnerships and the Partnership Properties is an issue which is common to all members of the proposed class. The reso-

lution of that issue will be determined on the basis of facts and legal principles common to all class members.

Likewise, the prerequisite of typicality is satisfied in this action with regard to the limited context in which it is presented. The applicability of § 362(a)(3) is contingent upon a finding that actions against the Partnerships or the Partnership Properties constitute actions to obtain "property of the estate" or "property from the estate" of the Debtors. Facts regarding individual lenders or the type of loan or security interest upon which such an action is based are not determinative. Therefore, any defenses to the question of the applicability of § 362 will be simultaneously contested on behalf of all class members by the named defendants in the presentation of their individual arguments.

Finally, the Court perceives no dispute as to the requirements of Rule 23(a)(4). Given the manner in which this adversary has proceeded, the Court is convinced that the interests of the class have been fairly and adequately protected with regard to the question of the applicability of § 362(a)(3). Both named and non-named defendants were given the opportunity to participate in this proceeding. In fact, numerous attorneys with extensive bankruptcy experience presented legal arguments on this issue. Therefore, certification of a defendant class, at this stage, for the limited purpose of effectuating declaratory relief does not pose any due process concerns.

Having met all of the prerequisites of Rule 23(a), the Court must turn its attention to the requirements of Rule 23(b). The Debtors base their motion for class certification on Rule 23(b)(1)(B). The Court is in agreement that the proposed class meets the requirements of Rule 23(b)(1)(B) for the limited issue presented under § 362(a)(3).

This Court is not the only forum which may determine whether the automatic stay imposed in the Debtors' jointly administered cases is applicable to actions against the Partnerships or the Partnership Properties. *N.L.R.B. v. Edward Cooper Painting, Inc.*, 804 F.2d 934 (6th Cir.1986). With

numerous actions pending in state courts, it is inevitable that some state court will address the issue. Although admittedly the issue is most likely to be raised by the Debtors as a defense, the precedent set by a decision adverse to a particular lender may prove, as a practical matter, dispositive with respect to other members of the class. Such a result would be particularly unjust for class members if the party initially litigating the issue could not and did not raise all of the defenses of class members. Given the risk of such a result, the Court believes the interests of all class members would be better served if the issue were adjudicated before a single court that had the benefit of considering all the defenses of class members. Therefore, for the limited purpose of effectuating declaratory relief premised solely on the determination of the applicability of § 362(a)(3), the Court sustains the Debtors' motion for certification of a defendant class. Such class, however, shall consist only of all persons and entities who have or obtain a mortgage or other security interest in Property of a Partnership for which CII or CIF serves as a general partner.

### 3. Application Of Rule 23 To Request For Relief Under 11 U.S.C. § 105

#### a. Injunctive Relief Necessitated By The Granting Of Declaratory Relief

The Court focuses next on the issue of certification of a defendant class for the purpose of granting injunctive relief which is ancillary to any declaratory relief regarding § 362 that this Court may grant. In essence, the Debtors seek a declaration in the form of an injunction which reiterates the Court's findings regarding the applicability of § 362. The use of § 105 in that fashion results merely in the issuance of an order that is necessary to carry out the provisions of Title 11. Injunctive relief of that nature does not require independent analysis on a lender by lender basis. Therefore, such an order may be issued as ancillary relief to the certification for § 362 purposes. However, the Court does not believe that separate or additional certification of a defendant class is necessary or appropriate for such relief.

#### b. Injunctive Relief Based Upon An Extension Or Incorporation Of The Provisions Of § 362, Or Based Solely Upon § 105

Finally, the Court considers the issue of certification of a defendant class for the purpose of granting injunctive relief unrelated to any declaratory finding regarding the applicability of § 362. As an alternative to declaratory relief coupled with mere ancillary injunctive relief, the Debtors request that an injunction be issued pursuant to § 105(a) of the Bankruptcy Code on what appear to be two grounds. First, the Debtors seek a § 105(a) injunction which extends or incorporates the protections and procedures contained in § 362 and enjoins all members of the defendant class from pursuing any claims against the Partnerships or the Partnership Properties in violation of this expanded automatic stay. And second, the Debtors seek an injunction premised solely upon § 105.

As mentioned above, certain of the named and non-named defendants moved for dismissal at the Consolidated Hearing. At that time, this Court orally sustained that dismissal motion to the limited extent it related to certification of a defendant class established to effectuate injunctive relief premised solely upon § 105(a) of the Bankruptcy Code and unrelated either to injunctive relief employed primarily to enforce or restate the declaratory finding regarding the application of § 362 or to injunctive relief premised upon an extension or incorporation of § 362. As required by Rule 41(b) of the Federal Rules of Civil Procedure, the reasons for that dismissal are set forth below. The Court also finds that the same rationale applies to the Debtors' request for injunctive relief under § 105(a) which extends or incorporates the protections and procedures contained in § 362.

■ The critical factor in determining the appropriateness of certification of a defendant class, under these circumstances, is the nature of the relief requested. The type of relief sought here by the Debtors is injunctive, rather than declaratory.

The importance of that factor is the analysis that must be employed to determine whether the relief is warranted. Section 105 injunctive relief, premised upon Rule 65 of the Federal Rules of Civil Procedure, requires a balancing of the relative harms on an individual, rather than aggregate, basis. Given that analytical requirement the typicality prerequisite of Rule 23(a)(3) cannot be satisfied. And that analytical requirement applies whether the requested relief is based solely under § 105(a) injunctive powers or whether that relief is stated as an extension of § 362 through the use of § 105(a).

Rule 23(a)(3) requires that the defenses of the representative parties be typical of the defenses of the class. However, throughout this proceeding numerous named and non-named defendants indicated a plethora of factors which differentiate each lender. Such factors range from the type and size of the lending institution, to the type and maturity of the Partnership Property securing each loan. Recognizing the existence of such a diverse set of circumstances, it is impossible for this Court to find that the defenses of the named representatives to the imposition of an injunction are typical of all the defenses of the class. And, where the injunctive relief sought would be imposed upon the Defendants prior to any subsequent hearing where individual defenses might be raised, the Court finds that the prerequisite of typicality required by Rule 23(a) cannot be satisfied and that certification of the proposed defendant class would be inappropriate.

In addition, even if the prerequisites of Rule 23(a) had been satisfied, the Court finds that certification pursuant to Rule 23(b)(1)(B) is not proper under these circumstances. This Court is the only forum where the Debtors could seek relief under § 105. And, given the consideration of individual circumstances in granting § 105 injunctive relief pursuant to Rule 65, the prosecution of separate actions against individual members of the class would not create the risk that adjudication of the actions would be dispositive with respect to all other members of the class.

Further, this case does not qualify as a "limited fund" case. Traditionally, such cases involve actions in which class members have claims against a single fund that may prove insufficient to satisfy all of those claims. In the present case, however, there in fact exist a large number of separate and distinct limited funds. Each such fund, for the most part, secures the claim of a single class member. Therefore, the satisfaction of one class member's claim generally does not impact upon the satisfaction of another class member's claim. No request was made to limit the class to defendants with guarantees or other recourse to the Debtors. Accordingly, Rule 23(b)(1)(B) is not satisfied in this action for any matter based upon independent relief under 11 U.S.C. § 105 premised upon the requirements of Rule 65.

B. *The Application of 11 U.S.C. § 362 to the Debtors' Interest*

In support of their argument that this Court should declare that the actions of the Defendants against the Partnerships or the Partnership Properties are barred by the Bankruptcy Code's automatic stay, the Debtors rely upon 11 U.S.C. §§ 541(a)(1) and 362(a)(3). Those sections state in applicable part:

§ 541. **Property of the estate**

(a) The commencement of a case ... creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C.A. § 541(a)(1) (West Supp.1989);

§ 362. **Automatic stay**

(a) ... a petition ... operates as a stay, applicable to all entities, of—

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

11 U.S.C.A. § 362(a)(3) (West Supp.1989).

Each of the asserted interests, the General Partner Interests, the Vendee Inter-

ests and the Second Mortgage Interests, must be analyzed under each of those provisions to determine if the Defendants' actions against the Partnerships or the Partnership Properties violate the automatic stay.

### 1. The General Partner Interests

■ Uniform partnership law gives a general partner in a limited partnership an interest in the partnership (the "Partnership Interest"), a right to participate in the management (the "Management Interest"), and status as a tenant in partnership ("the "Tenancy Interest"). *See e.g.* Ohio Revised Code §§ 1775.23 and 1782.29. As general partners in limited partnerships, the Debtors also have those rights. *See* Ohio Revised Code § 1782.24.

It is the Debtors' position that each of these General Partner Interests is a legal or equitable interest of the Debtors which is property of their bankruptcy estates pursuant to 11 U.S.C. § 541(a). As estate property, the Debtors argue that such General Partner Interests are protected by the operation of 11 U.S.C. § 362(a)(3) from acts of the Defendants to obtain possession of or exercise control over the Partnership Properties.

In support of their position, the Debtors rely on *48th Street Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th Street Steakhouse, Inc.)*, 835 F.2d 427 (2nd Cir. 1987), *cert. denied,* — U.S. —, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988); *Beverly Plaza Assoc. v. Saul (In re Kroh Bros. Develop. Co.)*, 91 B.R. 525 (Bankr.W.D.Mo.1988); *Quarles House Apts. v. Plunkett (In re Plunkett)*, 23 B.R. 392 (Bankr.E.D.Wis. 1982); *Harsh Investment Corp. v. Bialac (In re Bialac)*, 712 F.2d 426 (9th Cir.1983); *A.H. Robins Co. v. Piccinin (In re A.H. Robins Co.)*, 788 F.2d 994 (4th Cir.), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); and *Johns–Manville Corp. v. Asbestos Litigation Group (In re Johns–Manville Co.)*, 33 B.R. 254 (Bankr.S. D.N.Y.1983).

Although the Debtors concede the existence of several cases that hold against their positions, they maintain that those cases were wrongly decided. *See Venture Properties, Inc. v. Norwood Group, Inc. (In re Venture Properties, Inc.,* 37 B.R. 175 (Bankr.D.N.H.1984); *Dominican Fathers of Winona v. Dreske (In re Dreske),* 25 B.R. 268 (Bankr.E.D.Wis.1982); *In re Korangy,* 1989 WL 34317, 1989 Bankr. LEXIS 500 (Bankr.D.Md. March 30, 1989). The Debtors further declare that the size or value of their asserted General Partner Interests is irrelevant to the determination whether such interests are included as property of their bankruptcy estates. To the extent *Turner v. Lee (In re Minton Group, Inc.),* 46 B.R. 222 (S.D.N.Y.1985), holds otherwise, the Debtors believe the *Minton* Court misapplies the law.

The Debtors also assert that most of the decided cases have failed to properly consider the Management Interests of a managing general partner in a limited partnership. They maintain that the only case considering such Management Interests protected a debtor's right to management and control. *Plunkett,* 23 B.R. at 394.

In response the Defendants allege that the Debtors have failed to comprehend the effect of the entity theory upon partners who are debtors in bankruptcy cases. The Defendants further argue that the relief sought by these Debtors is unsupportable and goes far beyond existing case law.

It is clear that under bankruptcy law a partnership is an entity separate from any of its partners. *Dreske,* 25 B.R. at 270. Such separate legal identity means not only that a partnership may file its own bankruptcy case, but also that a partnership and a partner may not file a joint case. *See* 11 U.S.C. § 302. It is further undisputed that whatever legal or equitable interests a general partner has in a partnership become part of that partner's bankruptcy estate under 11 U.S.C. § 541(a).

Each partner in a limited partnership, general or limited, has a Partnership Interest. That Partnership Interest is defined as "a partner's share of the profits and losses of a limited partnership and the right to receive distributions of partnership assets." Ohio Rev.Code § 1782.01(J). The extent of those Partnership Interests held by the Debtors, as set forth in the sample

partnership agreements, is discussed in Part III.D of this opinion. Under limited partnership law generally, those Partnership Interests are personal property. *See* Ohio Rev.Code § 1782.39. The Partnership Interests, which make available to the Debtors shares of income or distributions from the sale or refinancing of Partnership Properties, come into each Debtor partner's bankruptcy estate and are available for creditors. Those Partnership Interests are personal rights which each of these Debtor partners is entitled to use for its own purposes. Ohio Rev.Code § 1782.39. Because those Partnership Interests vest in the estate, parties may not take actions to exercise control over these interests or remove them from the Debtors' possession. *Dreske*, 25 B.R. at 271. Without relief from the automatic stay, other parties may not appropriate either of the Debtor partner's Partnership Interests and may not execute or otherwise interfere with distributions arising from those interests. The Debtors' rights to income and distribution, however, are subordinate to the rights of creditors of the Partnerships. *Redmon v. Witt*, 9 F.2d 36 (6th Cir.1925).

The Defendants in this adversary, however, are not acting against the Debtors' Partnership Interests in seeking to obtain judgments against the Partnerships for debts of the Partnerships. Likewise, the Defendants are not acting against the Debtors' Partnership Interests by seeking to foreclose their mortgage interests in the Partnership Properties. While the Debtors' Partnership Interests may lose value if the Partnership Properties, which may be the sole source for any income or distribution from the Partnerships, are taken away, each partner's rights to its designated shares remains. The Partnerships may acquire new properties or embark upon new enterprises for which the Debtors' shares of profits, losses and distributions remain unchanged. Accordingly, while 11 U.S.C. § 362(a)(3) stays any actions by the Defendants to take or exercise control over the Debtors' Partnership Interests or to obtain possession of those Partnership Interests by acting to dissolve the Partnerships or otherwise interfering directly with those Partnership Interests, the Court finds that the existence of the Debtors' Partnership Interests does not cause § 362(a)(3) to be applicable to the Defendants' actions to institute and prosecute foreclosure actions against the Partnership Properties.

The next components of the General Partner Interests which the Debtors argue are property of their estates are their rights, as general partners in limited partnerships, to participate in the management of the Partnerships. These Management Interests, as discussed in Part III.D of this opinion, are contractual and arise from provisions of the partnership agreements which also incorporate by reference powers granted in the "Uniform Act". The Management Interests are property of the Debtors' estates.

■ Various parties have asserted throughout these proceedings that the Chapter 11 filings terminated these Debtors' Management Interests as general partners under state statutory law and under the terms of the partnership agreements. Without extensive written analysis of this critical, but somewhat tangential issue, the Court finds that the Supremacy Clause of Article VI of the Constitution of the United States and the provisions of 11 U.S.C. § 365(e) defeat such arguments and wishful thinking by the Defendants. *In re Rittenhouse Carpet, Inc.*, 56 B.R. 131 (Bankr. E.D.Pa.1985); *In re Corky Foods Corp.*, 85 B.R. 903 (S.D.Fla.1988). This result is especially compelled in reorganization cases where the debtors are the managing general partners of limited partnerships. *In re Safren*, 65 B.R. 566 (Bankr.C.D.Cal.1986); F. Kennedy, *Partnership and Partners' Estates Under the Bankruptcy Code*, Ariz.St.L.J. 219, 261 (1983).

The Debtors rely primarily upon *Plunkett* for the application of § 362(a)(3) to their Management Interests. Such reliance is misplaced, however, as *Plunkett* is factually distinguishable. In *Plunkett* certain investors were attempting to remove a debtor as the managing general partner. The Court held that the investors' actions were actions against the debtor's contractual

right to manage the partnership property. And that contractual right was property of the estate. *Plunkett*, 23 B.R. at 394. As property of the estate, actions to terminate that right would be stayed by § 362(a)(3).

The Debtors also raise in their final post-trial reply brief the issue of their Management Interests as such relate to any disposition of a Partnership Property. In essence, the Debtors seem to say that since their Management Interests include the power to dispose of Partnership Properties, the Defendants' actions to foreclose the Partnerships' interests in the Partnership Properties are actions to take away the Debtors' rights to determine the disposition of those Partnership Properties. Clearly, however, such powers of disposition could not affect the right of a mortgagee to bring a foreclosure action against a Partnership Property for default in payments under the mortgage. The mortgagee's rights to foreclose are determined by the mortgage agreement and by applicable state law. The mortgagee is not a party to or subject to the partnership agreement as that agreement allocates powers of disposition between the managing general partner and the limited partners.

As with the Debtors' Partnership Interests, however, the actions of the Defendants against the Partnerships and the Partnership Properties are not actions against the Debtors' contractual Management Interests. Foreclosure actions by the Defendants may change the activities of the managing general partner and may even eliminate such activities as they relate to particular Partnership Properties, but the Defendants' actions are not actions to remove or exercise control over the contractual Management Interests which are property of the estate. Nor are the Defendants' actions acts to obtain such Management Interests from the estate. Accordingly, the Defendants' actions in seeking to foreclose the Partnerships' interests in the Properties are not barred by § 362(a)(3) because of the Debtors' Management Interests.

■ Finally, as general partners the Debtors also have Tenancy Interests in spe-cific Partnership Properties. Neither the partnership agreements generally nor Chapter 1782 of the Ohio Revised Code determine or set forth the Tenancy Interests of the Debtors in specific property. Therefore, the statutory provisions governing rights granted to a partner in a general partnership are the only source for any such existing Tenancy Interests. Ohio Revised Code § 1775.24 provides:

> (A) A partner is coowner with his partners of specific partnership property holding as a tenant in partnership.

> (B) The incidents of this tenancy are such that:

>> (1) A partner ... has an equal right with his partners to possess specific partnership property for partnership purposes; but he has no right to possess the property for any other purpose without the consent of his partners.

> . . . . .

>> (3) A partner's right in specific partnership property is not subject to attachment or execution, except on a claim against the partnership ...

Ohio Rev.Code Ann. § 1775.24 (Anderson 1985).

The Debtors assert that such Tenancy Interests are property of their bankruptcy estates and that the actions of the Defendants in seeking to foreclose the Partnerships' interests in their respective Properties will destroy or diminish those Tenancy Interests. Even though such co-tenancies would not bring the entirety of a Partnership Property into either of the Debtors' bankruptcy estates, if the Tenancy Interests are legal or equitable interests of the Debtors in the Partnership Properties within the meaning of 11 U.S.C. § 541(a)(1), those Tenancy Interests would be property of the estate. Resolution of that issue does not depend upon record title which is in the respective Partnership. *See* H.R. Rep. No. 95–595, p. 367 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787, *reprinted in* App. 2, L. King. *Collier on Bankruptcy* (15th ed. 1989).

The Court finds that the Debtors' Tenancy Interests are not legal or equitable interests of the Debtors in property within the meaning of § 541(a)(1). It is not material whether such Tenancy Interests are excluded as powers exercisable solely for the benefit of another entity pursuant to 11 U.S.C. § 541(b) or whether such interests are viewed simply as indivisible joint interests in the property of a separate entity which do not rise to the level of legal or equitable rights of the Debtors in specific property. *See Hopkins Illinois Elevator Co. v. Pentell (In re Pentell)*, 777 F.2d 1281 (7th Cir.1985) (appeal of second mortgage holders to order of bankruptcy judge disbursing insurance proceeds to mechanic's lien holder); *Minton*, 46 B.R. 222. The Debtors' Tenancy Interests are not equitable or legally-cognizable rights in the Partnership Properties because there are no legal or equitable rights arising in favor of the Debtors from such Tenancy Interests.

To some extent the difficulty in this matter arises from the vestiges of the aggregate theory of partnership contained in the uniform statutes. That theory is clearly rejected by the Bankruptcy Code. Therefore, despite the general principle that property rights are defined by state law, where such rights conflict with the entity theory, the Bankruptcy Code principle prevails in a partner's bankruptcy. Any conflict here, however, is more apparent than real since a partner has no legally cognizable individual right to assign a Tenancy Interest, no right to make such an interest available for the use of the partner's creditors and no right to use or divide the property for the partner's own benefit. Indeed what limited possessory right the partner has as part of its Tenancy Interest is exercisable only for the benefit of the Partnership.

Any other interpretation would be inconsistent with other provisions of the Bankruptcy Code. For example, a trustee or debtor-in-possession has power, pursuant to 11 U.S.C. § 363, to sell property of the estate. Such power further extends to the sale of undivided interests of co-owners. But that power does not include the right to sell an interest of a co-tenant in partnership. *See* 11 U.S.C. § 363(h); *Connolly v. Nuthatch Hill Associates (In re Manning)*, 37 B.R. 755 (Bankr.D.Col.1984), *aff'd on § 363 grounds, remanded on other grounds*, 831 F.2d 205 (10th Cir.1987). And a creditor holding a mortgage against Partnership Property clearly does not have an allowed secured claim in the partner's case measured by the partner's interest as a tenant in partnership. *See* 11 U.S.C. § 506(a). Nor would it make sense to hold that a Tenancy Interest is property of the bankruptcy estate of a partner when a trustee or debtor-in-possession could not force turnover of the property in which such interest existed pursuant to 11 U.S.C. § 542, avoid a fraudulent transfer of that property under 11 U.S.C. § 544 or § 548, or avoid a post-petition transfer of that property under 11 U.S.C. § 549. *Minton*, 46 B.R. at 226; *E.A. Martin Machinery v. Williams (In re Newman)*, 875 F.2d 668 (8th Cir.1989). In fact, because of restrictions in partnership law, a debtor partner may lack authority to transfer partnership property at all other than as an authorized agent acting on behalf of the partnership. *See* Ohio Rev.Code §§ 1775.08 and 1775.09. Accordingly, the Debtors' Tenancy Interests in specific Partnership Properties are not property of their bankruptcy estates. In essence, such interests are mere derivative rights which flow from the Partnership Interests and are not independent rights in property.

Other cases cited by the Debtors warrant comment. As anticipated, the Court must find that any reliance upon *Kroh Bros.* arises only from a footnote in that decision. *Kroh Bros.*, 91 B.R. at 539 n. 5. The footnote, although supportive of the Debtors' position, is clearly dicta and unnecessary for the decision which is grounded upon 11 U.S.C. § 362(a)(1). Further, in *Bialac, Robins*, and *Manville*, the debtors had specific interests in property which were part of their bankruptcy estates. The parties sought to be stayed were proceeding against those specific interests. In *Bialac* that interest was a right of redemption granted to the debtor under state law

which would be specifically cut off by creditors proceeding against the property to which the right of redemption related. *Bialac*, 712 F.2d at 431. Likewise, in *Manville* and *Robins* the debtors had ownership rights in certain insurance policies. Although the proceeds of those policies may not have been payable to those debtors on their own behalf, such proceeds were available for the benefit of claimants against the policies who were also creditors of the debtors. Accordingly, efforts of claimants to collect those proceeds being held by a non-debtor were actions to obtain possession of property from those estates. *Manville*, 33 B.R. at 264; *Robins*, 788 F.2d at 1001. As such, those actions were subject to the automatic stay.

Finally, *48th Street Steakhouse* was an important case to the Debtors. In that case, the debtor was a sublessee with possessory rights in certain real property. Those rights were property of its estate and were exercisable for the debtor's benefit. The landlord's action in terminating the prime lease would have terminated those rights of possession. Therefore, the landlord's actions were acts to obtain property from the estate. *48th Street Steakhouse*, 835 F.2d at 430–31. The Debtors liken this to the Defendants' actions against the Partnership Properties which may, as a practical matter, destroy the value of their Partnership Interests and remove from the Partnerships the Properties to which the Debtors' Tenancy and Management Interests relate. But these Debtors have no rights to possession or management of the Partnership Properties which are exercisable either for their own benefit or for the benefit of their creditors. Moreover, actions against the real property of another entity which only indirectly affect the value of a debtor's contractual or personal property interests are simply not within the scope of § 362(a)(3). This Court believes that actions "to obtain property from the estate", within the meaning of § 362(a)(3), applies to actions against property owned by the debtor, but in another's possession, or to actions against possessory or other rights of the debtor in specific property where the underlying ownership interest is in another entity. Neither of those circumstances is present. The Debtors' only possessory rights are not property of their bankruptcy estates because such rights are exercisable only for the benefit of another entity. The remaining interests are contractual or personal in nature, are not rights in specific Partnership Properties and are not being proceeded against directly. While the Court agrees that *48th Street Steakhouse* is the closest authority for the Debtors' positions, certain critical distinctions make reliance on its holding insufficient for the position asserted in this action by the Debtors.

### 2. The Vendee Interests in the Executory Contracts

 CII asserts that the doctrine of equitable conversion operates to make its Vendee Interests protectable by the automatic stay. The Defendants challenge that assertion and argue that the Executory Contracts are illusory or sham contracts, that equitable conversion has not occurred and that on general equitable principles the doctrine should not be applied to the Vendee Interests.

 The doctrine of equitable conversion developed in courts of equity to give effect to the intentions of parties to a contract for the sale of real property when some unexpected event intervened between the time the parties agreed to transfer the real property and a deed was delivered to the vendee. *Chase Manhattan Mortgage and Realty Trust v. Bergman*, 585 F.2d 1171 (2d Cir.1978); *see generally* 27 Am. Jur.2d Equitable Conversion §§ 1–16 (1966). Essentially, the doctrine operates to transform the vendee's personal property interest in the contract into an interest in the realty while, at the same time, the vendor's real property interest is changed into a personal right to receive the sale price under the contract. *See In the Matter of Jones*, 768 F.2d 923, 928 (7th Cir. 1985); *Cleveland Trust Co. v. Bouse*, 163 Ohio St. 392, 127 N.E.2d 7 (1955). The doctrine is not a favored one and is used only where actual necessity requires its application to effectuate the intentions of the parties and, thus, prevent an injustice.

*Vigli v. Davis,* 79 Cal.App.2d 237, 179 P.2d 586 (Cal.Dist.Ct.App.1947).

It is unclear whether equitable conversion is available where a contract to sell realty was executed in and governed by the laws of a state recognizing the doctrine, but where the property is situated in a state which does not recognize the doctrine. *See Clarke v. Clarke,* 178 U.S. 186, 20 S.Ct. 873, 44 L.Ed. 1028 (1900); *Toledo Society for Crippled Children v. Hickok,* 152 Tex. 578, 261 S.W.2d 692 (1953) *cert. denied* 347 U.S. 936, 74 S.Ct. 631, 98 L.Ed. 1086 (1954). Therefore, although the Executory Contracts were executed in Ohio and are expressly governed by the law of Ohio, the doctrine may not be available if the state in which the vendor Partnership's Property is located does not recognize the doctrine. However, since at least some of the Partnership Properties are located in states which recognize the doctrine, application of the doctrine of equitable conversion generally to the Debtors' Vendee Interests will be considered.

The Defendants assert that even if equitable conversion is recognized by the courts of the state where the property is located, as it admittedly is for those unsyndicated Partnership Properties in Ohio, the doctrine does not operate until consideration has passed and any condition precedent not within the control of either of the parties has been satisfied. The contracts then must be specifically enforceable.

In support of those arguments the Defendants point to *Case v. United States,* 633 F.2d 1240 (6th Cir.1980). *Case,* in turn, relies for its interpretation of the law of equitable conversion in Ohio upon the case of *Sanford v. Breidenbach,* 111 Ohio App. 474, 173 N.E.2d 702 (Ohio Ct.App.1960). The *Sanford* court held that equitable conversion becomes effective only where a vendor has fulfilled all conditions precedent and is entitled to specifically enforce the contract for the sale of the real property. In addition, both parties must have intended in the contract that title should pass to the vendee upon execution of the contract of purchase. *Sanford,* 111 Ohio App. at 481, 173 N.E.2d at 707.

The later case of *Ferguson Realtors v. Butts,* 37 Ohio App.3d 30, 523 N.E.2d 534 (Ohio Ct.App.1987), also relied upon by the Defendants, holds that a contract for the sale of real property is not specifically enforceable where a condition precedent remains unfulfilled and such condition depends upon the consent or approval of a third party.

It is clear that the condition precedent in the Executory Contracts, that this Court determine not to issue a stay which would protect the Partnership Properties, had not occurred and was not within the control of CII or the vendor Partnerships at the time the bankruptcy petitions were filed. Therefore, under both *Ferguson Realtors* and *Sanford,* the Executory Contracts were not specifically enforceable and equitable conversion had not occurred to transform the Debtors' Vendee Interests into interests in the Partnership Properties.

In response, however, the Debtors cite *23 Tracts of Land v. United States,* 177 F.2d 967 (6th Cir.1949). And, indeed, *23 Tracts* does apply the doctrine of equitable conversion to transform the interest of a lessee with an oral option to purchase a parcel of land into a real property interest. That transformation, for purposes of interpreting the right to a claim and the applicability of the anti-assignment provisions of 31 U.S.C.A. § 203 in an eminent domain proceeding, was held to have occurred as of the date the lease was executed and delivered. The lessee was given the right to assert any claim for compensation from the taking of an easement against the property. *23 Tracts,* 177 F.2d at 970. This result makes sense because the lease and option existed prior to the government's exercise of eminent domain powers and the option price was set prior to that taking of an easement. To prevent unfairness to the lessee, who had exercised his purchase option prior to intervening in the eminent domain action, the lessee should be entitled to whatever diminution in value had resulted from the government's taking of the easement.

The reason that *23 Tracts* is not dispositive of the equitable conversion argument,

apart from the fact that *Case* is a later pronouncement by the Sixth Circuit, is that the effect of conditions precedent and the availability of specific performance to the vendor were not necessary considerations in *23 Tracts*. The lessee-optionee in *23 Tracts* had exercised his purchase option and had received a deed to the property prior to intervening in the eminent domain action. *23 Tracts*, on the one hand, and *Case* and *Sanford* on the other hand, are not in conflict. The rule to be synthesized from those cases is that if the parties intend for title to pass at the time the contract to convey land is executed and any conditions precedent to the obligation of the party seeking equitable conversion have been met or are ready to be met, equitable conversion may appropriately be invoked. Once properly invoked, under the law of Ohio, the doctrine may permit relation back to the date of the execution of the contract.

As applied to the Vendee Interests, equitable conversion had not occurred at the time of CII's bankruptcy filing. Indeed, before a Partnership could successfully seek to specifically enforce the Executory Contracts, this Court would have to find that neither the automatic stay nor an injunction would stay actions against the Partnerships or the Partnership Properties. So long as that condition remained and CII had not waived it, specific performance would not be available to the vendor Partnership and CII's Vendee Interests, contractual in nature, would not have been transformed into interests in the Partnership Properties under the doctrine of equitable conversion.

Even if the Court is in error regarding the time when CII's Interests would be transformed into interests in realty, the Court believes that application of the doctrine of equitable conversion, like other equitable remedies, is discretionary with the Court. It is not a favored doctrine and is applied only when the refusal to do so would create or perpetuate an injustice. An equity court, therefore must consider all circumstances surrounding the execution of the contracts.

The circumstances of the execution of these Executory Contracts do not permit application of the doctrine. The Court believes it would indeed be a perversion of the doctrine of equitable conversion to permit transformation of the nature of the interests of the vendee and vendor in each of these contracts and, as soon as such transformation were accomplished, for those interests to terminate under the specific terms of each contract. While such contractual provisions may be carefully crafted, as stated by counsel for the Debtors, creation of real property interests in the unsyndicated Partnership Properties by such devices would be an inappropriate invocation of the Court's equity powers. It is not so much that the result would be untenable, given the Debtors' control over the unsyndicated Partnerships by its general partner interest and ownership of the sole limited partner, but the result would be contrived and manipulative of the interests of third parties. The auspices of a court of equity should not be used for that purpose. Accordingly, the Vendee Interests remain as contractual interests which, although property of the Debtors' bankruptcy estate, are not legal or equitable interests of the Debtors in Partnership Properties. Therefore, the Defendants' actions against the Partnership Properties are not stayed by 11 U.S.C. § 362(a)(3) because of the Vendee Interests.

### 3. *The Second Mortgage Interests*

Finally, the Debtors assert property interests in the Partnership Properties by virtue of the Second Mortgage Interests held directly by CII or CIF against 16 of the Partnership Properties. Arguments by the Debtors suggest that without the protections of the automatic stay the Second Mortgage Interests will be destroyed by the Defendants' foreclosure actions. Few of the Defendants directly addressed the validity of such Second Mortgage Interests or the applicability of § 362 to protect those interests. Those defendants which addressed the Second Mortgages Interests focused on the value of such interests and the Debtors' likelihood of ever realizing

those values. That focus is, however, misplaced.

Documentary evidence of the second mortgages was not introduced into evidence. The Leventhal representative, however, testified that he had reviewed summary reports for each Partnership which showed such data and that he or his staff had reviewed the underlying documentation for those mortgages. Therefore, for purposes of this issue, the Court will assume the existence and validity of such mortgages. Should it later develop that such assumption is invalid for a specific Second Mortgage Interest, these findings will be irrelevant to such asserted interest.

The issue of the applicability of the automatic stay to protect the Debtors' Second Mortgage Interests first requires an analysis of the characterization under applicable state law of those apparently unrecorded Second Mortgage Interests. As the Partnership Properties involved are located in Ohio, Florida and Indiana, the status of a holder of an unrecorded mortgage in those states must be examined. If such unrecorded Second Mortgage Interests are recognized as liens against the respective Partnership Properties under applicable state law, then the effect upon those Second Mortgage Interests of the actions of the Defendants in seeking to foreclose their first mortgage interests must be examined.

■ The Debtors' Second Mortgage Interests are property of their estates. *Florida Inst. of Technology v. Carpenter (In re Westec Corp.)*, 460 F.2d 1139 (5th Cir. 1972). It is the law generally, however, that the recording statutes exist for the benefit of parties whose interests are subsequent to the unrecorded interest. Therefore, as between the mortgagor and mortgagee, an unrecorded, but otherwise valid, mortgage usually is effective to create a lien against the property for which the mortgage was given. *See e.g., Betz v. Snyder*, 48 Ohio St. 492, 28 N.E. 234 (1891); *Freligh v. Maurer*, 111 So.2d 712 (Fla.Dist. Ct.App.1959). That lien is also an interest in the particular Partnership Property, although its priority or value may be subject to defeasance by a subsequent mortgagee or lien creditor whose interest is perfected by proper recording. Further, actual notice of those Second Mortgage Interests has been given to the Defendants in this action. Therefore, the Court believes any Defendant seeking to foreclose its first mortgage interest would have to name the appropriate Debtor as a defendant in its foreclosure action.

Although the Second Mortgage Interests are interests in specific Partnership Properties, because those interests are liens rather than ownership interests, the Second Mortgage Interests do not cause the Partnership Properties against which the liens relate to become property of the Debtors' estates. It is only the lien interests or rights which come into the estate. The issue then is whether the Defendants' actions in foreclosing their first mortgage interests are actions which remove directly the Second Mortgage Interests from the Debtors' estates.

■ The Court finds that the provisions of 11 U.S.C. § 362(a)(3) stay the Defendants' actions to foreclose their first mortgage liens where such foreclosures necessarily risk extinguishment of valid, but unrecorded, second mortgages held by either of these Debtors. The effect of the Defendants' actions in foreclosing their interests against the Partnership Properties is closely analogous to the impact of the landlord's actions in *48th Street Steakhouse*. Termination of the Debtors' Second Mortgage Interests is not certain since foreclosure actions could, under certain circumstances, permit repayment of those obligations. But such results are unlikely and certainly not assured. Therefore, the stay against such foreclosure actions provided by § 362(a)(3) is appropriate to give the Debtors a breathing spell to determine how to preserve any existing value in those Second Mortgage Interests for their reorganization process. Accordingly, the provisions of 11 U.S.C. § 362(a) apply to protect the Second Mortgage Interests held directly by these Debtors.

C. *The Appropriateness of Injunctive Relief to Protect the Debtors' Interests in the Partnerships or the Partnership Properties*

■ Section 105 of the Bankruptcy Code is relevant to the relief sought by the Debtors in three ways. First, as a procedural device, it may be employed to effectuate the purposes of the Bankruptcy Code (see Part VI herein). Secondly, if 11 U.S.C. § 362(a)(3) is applicable to stay the actions of the Defendants, this Court could issue an order pursuant to § 105 to carry out or clarify the declaratory relief under § 362. Such an order merely pronounces those findings in a manner not necessarily obvious from a facial reading of § 362, makes clear which parties are impacted by that ruling and enjoins, as a restatement of the automatic stay, any actions otherwise prohibited by § 362. The issuance of such an order does not require findings beyond those made in connection with the declaration of the applicability of § 362. Because of findings in prior portions of this opinion, however, such an order will issue as to all members of the Defendant class only in connection with the Second Mortgage Interests of the Debtors.

The only other use of § 105 which this Court believes to be relevant to the relief requested in this action is injunctive relief under the standards of Rule 65 of the Federal Rules of Civil Procedure, applicable in this proceeding by Bankruptcy Rule 7065. And, as the Court has already found, any "extension of § 362 through the use of § 105" is an injunction issued independently under Rule 65.

In the portion of this opinion relating to class certification, the Court previously found that certification of a defendant class would be inappropriate for purposes of issuing an injunction grounded upon an independent application of the Court's injunctive powers under § 105, based upon Rule 65. Such finding means that the only parties remaining for which independent injunctive relief must be considered are the named defendants.

■ The factors which the Court must consider in determining whether to issue an injunction against the named defendants are:

1. the likelihood of success on the merits;
2. whether the Debtors will suffer irreparable injury if the relief is not granted;
3. whether the harm to be suffered by the Debtors if the relief is not granted would be greater than the harm to the named defendants sought to be enjoined if the relief is granted; and
4. whether the public interest will be furthered by the granting of the requested relief.

*Unsecured Creditor's Committee of DeLorean Motor Co. v. DeLorean (In re DeLorean Motor Co.)*, 755 F.2d 1223, 1228 (6th Cir.1985).

Because the focus of this adversary action has been on a class remedy, premised upon the Debtors' contentions that the attributes of individual Partnership Properties and individual defendants were irrelevant, the record does not establish facts which would be necessary for the Court to consider in determining whether to issue an injunction against any of the named defendants. Specifically, the Court could not determine whether the harm to be suffered by the Debtors, which is certainly contested by some of the named defendants, would be greater than the harm to each of the named defendants sought to be enjoined. The Court believes that such facts cannot be derived from evidence relating only to harm in the aggregate, not compared with particular facts or attributes of the parties involved. As a consequence, the Court will not issue injunctive relief against any of the named defendants at this time.

## VI. CONCLUSIONS

Existing law and permissible extensions of those decisions which would be appropriate within the confines of the Court's role as an interpreter of the law rather than a legislator, compel the Court to deny most of the relief sought by the Debtors in this adversary. However, this Court, as a

court of equity empowered to implement the policies of the Bankruptcy Code, believes it is important to all parties that these Debtors have a reasonable and feasible opportunity to reorganize and to preserve the going-concern values of their assets for the benefit of their employees and for all of their creditors, secured and unsecured.

It is clear to the Court that CII has created an extensive empire. That creation includes interests in limited partnerships formed as a means of holding property and increasing investment appeal through the sale of investor partner interests. It also is clear that once changes in the tax laws removed those investment incentives, the viability of the CII empire, as it currently exists, has been severely imperiled. And the structure which worked well for so many years has become a nightmare under the separate entity constraints of the Bankruptcy Code.

The Court's observation from the Partnership Chapter 11 cases pending in this Court is that the financial resources of the Debtors and the size of their staffs limit their ability to manage separate cases for a greatly increased number of the Partnerships. Despite comments from some of the Defendants that it is unlikely extensive numbers of such filings will be required, this Court's sense of many of the Defendants' explicit or implicit intentions is that such filings may indeed be forced. It is further the Court's observation from existing cases that the overwhelming focus of those Partnership cases is on a restructuring of the mortgage obligations. In reality, where present or future value to these bankruptcy estates is likely, it should be possible to accomplish that result without the greatly increased administrative costs attendant upon hundreds of additional Chapter 11 filings.

The Court finds that it has power under 11 U.S.C. § 105(a) to authorize an alternative procedure which may bring some order out of the chaos which could follow the issuance of this order. This procedure is designed to make the Congressionally-preferred policy of reorganization a possibility for a debtor, such as CII, with a geographically scattered empire organized into single asset real estate partnerships, each with a mortgage which comprises the overwhelming majority of its debt. This procedure does not, and probably cannot, address the problems posed by limited partners or unsecured creditors of those Partnerships. Where such parties are significant or must be dealt with in an orderly fashion, Chapter 11 cases may be required. Where reorganization of these Debtors can be substantially achieved without that result, an alternative procedure may be effective.

Accordingly, the Court authorizes the Debtors, at their discretion, to seek injunctive relief pursuant to 11 U.S.C. § 105(a) through the mechanism of a motion filed and served pursuant to the Court's previously entered case management order, as amended. Further, such relief may be against specified lenders on a property by property basis where such relief is necessary because the lenders' actions are interfering with the Debtors' reorganization efforts. Such motions will be subject to all relevant rules in the 7000 series of the Bankruptcy Rules. A summons shall be utilized. Multiple properties of a given lender may be combined in one motion where such action is appropriate. However, the time for responsive pleadings and for hearing shall be as set forth in this Court's case management order and a copy of that order, as amended, shall be served with the motion and summons. The only departure from the case management procedure is that the hearing time for such motions shall be scheduled begining at 2:00 p.m. on the dates already set aside for status conferences. If multiple motions are required to be heard on the same day, alternate hearing times should be obtained from the courtroom deputy and noticed to the opposing party and other entities on The Service List.

Upon such appropriate requests, the Court can and will issue injunctive relief pursuant to 11 U.S.C. § 105(a), based upon Rule 65, on a property by property basis where the Debtors show that foreclosure or other disposition of a Partnership's interest in a Partnership Property will nega-

tively impact upon the ability of these Debtors to reorganize and where the balance of harm favors the Debtors. Grants of adequate protection to the respective lender may be part of that balancing process. *See, Otero Mills, Inc. v. Security Bank & Trust (In re Otero Mills, Inc.)*, 21 B.R. 777 (Bankr.D.N.Mex.1982); *In re Monroe Well Services*, 67 B.R. 746 (Bankr. E.D.Pa.1986).

This process will not, however, unless further ordered by the Court in a particular circumstance, result in the ability of the Debtors to invoke against the lenders other rights granted by the Bankruptcy Code. *See, e.g.*, 11 U.S.C. § 363(f). Nor will the injunction issue where the sole or overwhelming harm to the Debtors is the loss of management fees. Unless subsequent jointly-administered Chapter 11 filings are made for the various management companies, the Court's focus in the injunctive relief process will be on the current value of the Property to the Debtors' reorganization, demonstration of the feasible ability of such Property to generate profits, cash flow or net proceeds which could become available on a reasonable basis for unsecured creditors of the Debtors, either directly or by substantial reduction of deficiency judgments which would otherwise increase unsecured claims against the Debtors, and an analysis of the results of recent cash pass-through orders. The presence of guarantees by the Debtors, recourse affecting the Debtors or their Partnership Interests, or other factors not yet identified also may play a role.

The Court hopes that the existence of this procedure will encourage all parties to enter into good faith negotiations and thereby avoid the Court process. Such good faith is, of course, a two-way street. Lenders which take precipitous actions designed only to pressure or overwhelm the Debtors may find the Court's equity powers summarily dispatched. Likewise, if relief is sought by the Debtors against lenders with regard to Partnership Properties which have no feasible present or future value to these bankruptcy estates, the protective umbrella of the Court will not be extended. Given the time that has already elapsed in these proceedings and the progress hopefully made by Levanthal & Company during this period, the Court is optimistic that an orderly and meaningful process of evaluation can proceed, without posturing or other negative activities. Parties also will be required to respect the Court's resources, which are limited in time and personnel.

Based upon the foregoing, the Court finds that a defendant class, comprised of all those persons and entities who have or obtain a mortgage or other security interest in property of a limited partnership in which CII or CIF is a general partner, shall be, and is hereby certified. Pursuant to Rule 23(c)(4), such certification is for the sole issue of declaratory relief directed to whether the provisions of 11 U.S.C. § 362(a)(3) bar the Defendants' actions against the Partnerships or the Partnership Properties. The Court further declares that the Second Mortgage Interests of the Debtors are protected by the provisions of 11 U.S.C. § 362(a)(3) from actions of the Defendants in seeking to foreclose the Partnerships' interests in their respective Partnership Properties against which valid Second Mortgage Interests exist. The Court further declares that the Defendants' actions are not stayed by 11 U.S.C. § 362(a)(3) because of the Debtors' General Partner Interests or Vendee Interests. Finally, the Court finds that the Debtors' motion for preliminary and injunctive relief shall be, and is hereby, denied. However, upon presentation by the Debtors of an appropriate order, the Court will issue an order pursuant to 11 U.S.C. § 105(a), which restates, in injunctive form, the declaratory relief granted under 11 U.S.C. § 362 regarding the Second Mortgage Interests.

IT IS SO ORDERED.